MARY JENICE JOYNER v. JOHN HARDING LUCAS, JR.

No. 7814DC851

(Filed 7 August 1979)

**Bastards § 10— action to establish paternity — time limitation — procedural limitation — tolling of statute — equitable estoppel**

> The time limitation in G.S. 49-14 for bringing a civil action to establish paternity is not a substantive limitation on the right of action but is only a procedural limitation; therefore, the time limitation may be tolled under G.S. 1-21 by defendant's absence from the State, and a party may be equitably estopped from asserting it.

APPEAL by plaintiff from *Gantt, Judge.* Order entered 21 March 1978 in District Court, DURHAM County. Heard in the Court of Appeals 21 May 1979.

Plaintiff initiated this action 27 May 1977 seeking a judicial determination of the paternity of her infant child, Mario Denard Joyner, born 9 November 1973. This action was filed pursuant to G.S. 49-14 through 16 and seeks medical expenses incident to the plaintiff's pregnancy and the birth of the child, payments for the past and future support of the child, reasonable attorney's fees, and custody. Plaintiff alleges that defendant has been a nonresident of North Carolina since September of 1972; that he and plaintiff for several years prior to the birth of the child had cohabited and planned to be married; that 14 February 1973 plaintiff and defendant had sexual intercourse in the Holiday Inn in Chapel Hill; that defendant has admitted being the father of the child and has expressed a desire to support the child; and that defendant, nevertheless, repeatedly has refused to support the child.

Defendant has not answered the complaint. Nevertheless, on 10 November 1977, he moved to dismiss the action alleging that it was not properly commenced within the time allowed by G.S. 49-14. Furthermore, defendant contends that plaintiff's civil action is barred because a previous criminal action against defendant based upon these same facts and allegations was dismissed for failure to initiate the proceeding within the time limits called for in G.S. 49-4. Two affidavits filed by John Harding Lucas, Sr., recite facts which tend to show that, although defendant attended college at the University of Maryland and plays professional basketball for the Houston Rockets of the National Basketball Association, he has remained a resident of North Carolina during that period. The affidavits allege that defendant attended public school in Durham; that since entering college he has been home at almost every opportunity; that during the summers from 1973 until 1977 he spent considerable time in North Carolina; that he is a registered voter in Durham; a local church member; that his automobile is registered and licensed in North Carolina; that he continued to receive his important mail in Durham at the home of his parents; and that he maintains a local bank account. Defendant denies that he was a resident of Texas in 1975 through 1977. Defendant, however, admits that he has not paid income taxes in North Carolina from 1975 through 1977.

Affidavits of witnesses for plaintiff were submitted alleging that defendant had admitted he was the father of the child, Mario

Denard Joyner. An affidavit of Donna J. Hicks, a Child Support Investigator for the Durham County Department of Social Services, was submitted stating that defendant and an attorney met with her to discuss the matter. Defendant at that time admitted having sexual intercourse with plaintiff in Chapel Hill in February of 1973. Defendant admitted that he and his father had offered in December of 1973 to support the child if it was his.

Plaintiff submitted an affidavit wherein she alleges that she had sexual intercourse with defendant at the Holiday Inn in Chapel Hill on 14 February 1973; that the child was the child of John Harding Lucas, Jr.; that on 26 December 1973, defendant admitted being the father of the child Mario Denard Joyner; that on several meetings in 1975 after the birth of the child, defendant led plaintiff to believe that he was going to support the child; and that since 1976 defendant has made no further representations concerning his responsibilities to the child and has refused to support the child.

On 20 March 1978, a hearing was held on motions pending in the case. Thereafter, on 21 March 1978, the trial court entered an order dismissing the action with prejudice. Among other findings of fact and conclusions of law, the trial court determined that this action was not commenced within the time requirements of G.S. 49-14 and that the running of the time period was not suspended by G.S. 1-21. The trial court also concluded that the doctrine of equitable estoppel did not apply to prevent defendant from pleading the statute of limitations.

From entry of the order dismissing the action, plaintiff appeals.

*Eugene C. Brooks III and Richard N. Watson for plaintiff appellant.*

*Powe, Porter, Alphin & Whichard, by N. A. Ciompi, for defendant appellee.*

MORRIS, Chief Judge.

The trial court entered its order dismissing plaintiff's action pursuant to defendant's motion to dismiss under G.S. 1A-1, Rule 12(b). Nevertheless, because matters outside the pleadings were considered by the court in reaching its decision, the ruling should

be treated as an order granting summary judgment. G.S. 1A-1, Rule 12(b). *See Conover v. Newton,* 297 N.C. 506, 256 S.E. 2d 216 (1979); *Stanback v. Stanback,* 297 N.C. 181, 254 S.E. 2d 611 (1979); *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971); *see generally Annot.,* 2 A.L.R. Fed. 1027, 1028, n. 2. Therefore, in our consideration of this matter, we must remain cognizant of the fundamental proposition that a motion for summary judgment properly is granted only when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c).

Although the parties present other questions on appeal, the ultimate question for resolution concerns whether plaintiff is foreclosed from having the issue of her child's paternity, and that child's entitlement to support and maintenance, determined by a jury. Plaintiff's primary obstacle is the time limitation for instituting civil actions for paternity under G.S. 49-14, which, when this action was initiated, provided:

"Civil action to establish paternity. — (a) The paternity of a child born out of wedlock may be established by civil action. Such establishment of paternity shall not have the effect of legitimation.

(b) Proof of paternity pursuant to this section shall be beyond a reasonable doubt.

(c) Such action shall be commenced within one of the following periods:

(1) Three years next after the birth of the child; or

(2) Three years next after the date of the last payment by the putative father for the support of the child, whether such last payment was made within three years of the birth of such child or thereafter.

Provided, that no such action shall be commenced nor judgment entered after the death of the putative father."

Identical civil actions were instituted 17 June 1976 and 10 February 1977, although each was dismissed without prejudice because of plaintiff's failure properly to serve the defendant John Harding Lucas, Jr. The present action was dismissed for failure to bring the action by 9 November 1976, three years next after

the birth of the child. Plaintiff's own allegations that defendant has continually refused to support the child precludes the application of G.S. 49-14(c)(2).

The initial question presented is whether G.S. 49-14 provides a "procedural" or "substantive" statute of limitations. The general rule acknowledged by both parties generally provides that when a statute which creates a right of action not existing at common law includes a limitation as to the time within which to bring the action, the limitation of time becomes an element of the right of action itself. Failure to commence the action within the specified time generally results not only in a loss of the right to enforce the action, but in a loss of the substantive right of action itself. *See generally* 51 Am. Jur. 2d, Limitation of Actions § 15. Defendant contends that the time limitation in G.S. 49-14 is just such a substantive limitation on the right of action. It is firmly established that the statute abrogates the common law. *Allen v. Hunnicutt*, 230 N.C. 49, 52 S.E. 2d 18 (1949); *see also Conley v. Johnson*, 24 N.C. App. 122, 210 S.E. 2d 88 (1974); *Dellinger v. Bollinger*, 242 N.C. 696, 89 S.E. 2d 592 (1955); *see generally* 2 Lee, N.C. Family Law, § 177 (1963).

As support for the viability and applicability of this general rule in North Carolina, defendant cites cases applying our wrongful death act prior to the 1959 amendment which removed from the statute what the courts had construed as a substantive one-year limitation on the right of action. The law applying former G.S. 28-173 established that the provision requiring the action to be brought within one year was not a statute of limitation, but it was construed as a condition precedent to maintenance of the right of action. *Webb v. Eggleston*, 228 N.C. 574, 46 S.E. 2d 700 (1948); *Tieffenbrun v. Flannery*, 198 N.C. 397, 151 S.E. 857 (1930). The statute, as then written, appeared in pertinent part as follows:

> "Death by wrongful act; recovery not assets; dying declarations.—When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their executors, administrators, collectors or successors shall be liable to an action for damages,

to be brought within one year after such death, by the executor, administrator or collector of the decedent; and this notwithstanding the death, and although the wrongful act, neglect or default, causing the death, amounts in law to a felony. . . ."

The statute as written clearly annexed to the right of action the requirement that the action "be brought within one year after such death". We note that the harsh results of this statute were ameliorated in 1959 when the limitation was taken from that statute and transferred to G.S. 1-53(4), which is contained among the general limitation provisions in the chapter on civil procedure.

The structure and language of G.S. 49-14 do not compel us to the same interpretation applied to the former G.S. 28-173. The right of action under G.S. 49-14 was created in subsection (a) of the section. The procedural aspects of the action were thereafter delineated in the succeeding subsections. The language expressing the time limitation was not annexed to the language creating the cause of action, as was true in former G.S. 28-173. G.S. 49-14, being a remedial statute, not a penal statute, is to be construed liberally so as to assure fulfillment of the beneficial goal for which it was enacted. *Cf. Jernigan v. Insurance Co.*, 16 N.C. App. 46, 190 S.E. 2d 866 (1972). The purpose of the statute is to establish a means of support for illegitimate children and "[s]tatutory construction should seek to accomplish that purpose and not frustrate legislative intent." *Wright v. Gann*, 27 N.C. App. 45, 47, 217 S.E. 2d 761, 763 (1975). Whether the statute is to be regarded as "substantive" or "procedural" depends upon the language employed, not merely upon whether it appears in a statute creating a new liability. *See Firemen's Insurance Co. v. Diskin*, 255 Cal. App. 2d 502, 63 Cal. Rptr. 177 (1967); *Myers v. Stevenson*, 125 Cal. App. 2d 399, 270 P. 2d 885 (1954); *see generally* 51 Am. Jur. 2d, Limitation of Actions § 15; 53 C.J.S., Limitation of Actions § 1(c).

In our opinion, the time limitations of G.S. 49-14 should be considered as a procedural limitation. We reach this conclusion not only because of the language and structure of the statute, but also out of concern resulting from the harshness of the statute in its application and the constitutional implications of more strictly

limiting the rights to support of an illegitimate than those of a legitimate child. We are cognizant of the mandate of *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed. 2d 31 (1977); *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed. 2d 56 (1973), and *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed. 2d 768 (1972). We recognize that no child is responsible for its birth, and penalizing the illegitimate for the irresponsibility of its parents who had the opportunity to conform their conduct to societal norms would be ineffectual and illogical.

Having reached the conclusion that the time limitation of G.S. 49-14 is not a substantive limitation on the right of action, we need not consider plaintiff's argument addressing the constitutionality of G.S. 49-14. However, questions concerning the time barring provisions of G.S. 1-21 and the equitable doctrine of estoppel to plead the statute of limitations are presented. It appears from the judgment that the trial court did not consider that either of these theories was applicable because of its previous conclusion that the time requirements were substantive. Furthermore, to the extent that the trial court concluded that plaintiff had clear knowledge, as early as January of 1974, that defendant would refuse to support the child, the order improperly resolves genuine issues of material fact.

Our resolution of the primary question on appeal renders it unnecessary to consider plaintiff's remaining assignments of error. The asserted errors of which plaintiff complains are harmless in light of the fact that this matter must be returned to the district court for further consideration.

Furthermore, plaintiff's assignment of error with respect to the effect of the dismissal of the prior criminal action is not properly before this Court. The trial court's order did not rely upon the prior dismissal of the criminal action as grounds to estop prosecution of the civil action.

For the foregoing reasons, we conclude that the order of the trial court dismissing plaintiff's action must be

Reversed.

Judges HEDRICK and WEBB concur.