COUNTY OF LENOIR, EX REL. CYCONCIA FAYE COGDELL v. ERVIN O'BERRY JOHNSON

No. 798DC713

(Filed 15 April 1980)

**Bastards § 10; Constitutional Law § 20— action to establish paternity—statute of limitations—denial of equal protection to illegitimates**

The three-year statute of limitations set forth in G.S. 49-14(c)(1), which limits the time in which an action to establish the paternity of an illegitimate child must be commenced, is not substantially related to any permissible State interest and unconstitutionally discriminates against illegitimate children in violation of the Equal Protection Clause of the U. S. Constitution since it constitutes an impenetrable barrier to the right of some illegitimate children to receive support from their fathers, and no statute of limitations is provided for a support action instituted on behalf of a legitimate child.

APPEAL by plaintiff from *Wright, Judge.* Judgment entered 10 April 1979 in District Court, LENOIR County. Heard in the Court of Appeals 8 February 1980.

Plaintiff brought this action for the support of an illegitimate child pursuant to G.S. 49-15, G.S. 50-13.4 and Article 9 of Chapter 110 of the North Carolina General Statutes. Plaintiff alleged that Cyconcia Faye Cogdell was the mother of a child born out of wedlock and that defendant is the biological father of the child.

Plaintiff and the mother aver that they have made numerous demands upon the defendant for support of the child but that defendant has failed and refused to contribute adequate support in accordance with his ability. The mother receives funds from the Aid to Families with Dependent Children program for the support of the child. It is further alleged that defendant is a responsible parent under G.S. 110-135, as this term is defined by G.S. 110-129(3), and that the payment of public assistance to the mother created a debt due and owing by defendant to the State for the amount of the assistance provided. Plaintiff seeks an adjudication that defendant is the biological father of the child, and that he be found a "responsible parent", and prayed that defendant be ordered to support the child and pay the debt owing the State.

Cyconcia Faye Cogdell testified that defendant had fathered the child but contributed no support. Defendant admitted to having sexual relations with Cyconcia Cogdell in 1968 and in failing to contribute any more than a dollar towards the child's support. The child was born on 29 January 1969. The complaint in this action was filed on 8 January 1979. At the close of plaintiff's evidence, defendant moved for a directed verdict on grounds of the three-year statute of limitations set forth in G.S. 49-14(c)(1). Plaintiff argued that the statute is unconstitutional on equal protection grounds. The trial court found that defendant was the biological father of the child and that he had not contributed to the child's support, but held that the action was barred by the statute of limitations. From this judgment, plaintiff appeals. Defendant has not objected to or cross-appealed from the court's findings of paternity and nonsupport.

*Robert E. Whitley for the plaintiff appellant.*

*Vernon H. Rochelle for the defendant appellee.*

*Attorney General Rufus L. Edmisten, by Associate Attorney R. James Lore, for the State, amicus curiae.*

WELLS, Judge.

The sole question presented in this appeal concerns the constitutionality of the three-year statute of limitations set forth in G.S. 49-14(c)(1), which limits the time in which an action to

establish the paternity of an illegitimate child must be commenced. Plaintiff argues that the statute violates the Equal Protection Clause of the Constitution of the United States in that no such statute of limitations is provided for a support action instituted on behalf of a legitimate child. G.S. 49-14 provides:

> Civil action to establish paternity.—
> (a) The paternity of a child born out of wedlock may be established by civil action. . . . Such establishment of paternity shall not have the effect of legitimation.
>
> (b) Proof of paternity pursuant to this section shall be beyond a reasonable doubt.
>
> (c) Such action shall be commenced within one of the following periods:
>
> > (1) Three years next after the birth of the child; or
> >
> > (2) Three years next after the date of the last payment by the putative father for the support of the child, whether such last payment was made within three years of the birth of such child or thereafter.
>
> Provided, that no such action shall be commenced nor judgment entered after the death of the putative father.

The purposes of Article 3 of Chapter 49 are manifestly to *enable* an illegitimate child to receive support from its biological father and prevent it from becoming a public charge.

We recently considered the question whether the statute of limitations stated in G.S. 49-14(c)(1) grants a defendant in a civil paternity action a substantive right which could not be tolled while he is out of the State. *Joyner v. Lucas,* 42 N.C. App. 541, 257 S.E. 2d 105 (1979), *disc. rev. denied,* 298 N.C. 297, 259 S.E. 2d 300 (1979). In *Joyner* we held that the statute could be tolled by defendant's absence from the State, since the statute is procedural and not substantive, and we declined to address the constitutional issue which defendant raised. Chief Judge Morris, speaking for the Court, stated: "We reach this conclusion not only because of the language and structure of the statute, but also out of concern resulting from the harshness of the statute in its application and the constitutional implications of more strictly limiting the rights to support of an illegitimate than those of a legitimate child." *Id.,* 42 N.C. App. at 546-547, 257 S.E. 2d at 109.

A child born in wedlock is presumed to be not only the child of its natural mother, but also the child of the mother's husband, *State v. Rogers,* 260 N.C. 406, 133 S.E. 2d 1 (1963), and thus a legitimate child is generally not burdened with having to prove paternity. Under North Carolina law, a parent's obligation to support his child continues throughout the child's minority. There is no limitation as to time within which actions for the support of children must be commenced. *See,* G.S. 50-13.4; *Wells v. Wells,* 227 N.C. 614, 44 S.E. 2d 31 (1947).

It seems clear that the statute does, in fact, place illegitimate children in a disadvantageous classification. The only issue which remains concerns whether this classification violates the Fourteenth Amendment to the Constitution of the United States, which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

State laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause and legislatures have wide discretion in passing laws which have the inevitable effect of treating some people differently from others. *Parham v. Hughes,* 441 U.S. 347, 60 L.Ed. 2d 269, 99 S.Ct. 1742 (1979). This statutory presumption of validity may be undermined, however, if a State has enacted legislation creating classes based upon certain immutable human characteristics. Classification based upon illegitimacy has been held to be one such characteristic. *Levy v. Louisana,* 391 U.S. 68, 20 L.Ed. 2d 436, 88 S.Ct. 1509 (1968), *rehearing denied,* 393 U.S. 898, 21 L.Ed. 2d 185, 89 S.Ct. 65 (1968). "The basic rationale of these decisions is that it is unjust and ineffective for society to express its condemnation of procreation outside of the marital relationship by punishing the illegitimate child who is in no way responsible for his situation and is unable to change it." *Parham v. Hughes, supra,* 441 U.S. at 352, 60 L.Ed. 2d at 275, 99 S.Ct. at 1746.

Recognizing that illegitimate children are granted the same right to support from their parents as that afforded children born in wedlock, the question then becomes whether the statute of limitations provided in G.S. 49-14(c)(1) constitutes an impenetrable barrier to the enforcement of the right on the part of illegitimate children. In *Gomez v. Perez,* 409 U.S. 535, 538, 35 L.Ed. 2d 56, 60, 93 S.Ct. 872, 875 (1973), the United States Supreme Court stated:

---

---

... once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a state to do so is "illogical and unjust." [Citation omitted.] We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination. [Citations omitted.]

From the most recent decisions of the Court it is clear that judicial review of classifications based on illegitimacy must involve less than "strict scrutiny", but more than ordinary scrutiny.

[I]llegitimacy is analogous in many respects to the personal characteristics that have been held to be suspect when used as the basis of statutory differentiations. [Citation omitted.] We nevertheless concluded that the analogy was not sufficient to require "our most exacting scrutiny." [Citation omitted.] Despite the conclusion that classifications based on illegitimacy fall in a "realm of less than strictest scrutiny," *Lucas* also establishes that the scrutiny "is not a toothless one," [citation omitted] a proposition clearly demonstrated by our previous decisions in this area.

*Trimble v. Gordon*, 430 U.S. 762, 767, 52 L.Ed. 2d 31, 37, 97 S.Ct. 1459, 1463 (1977). In *Lalli v. Lalli*, 439 U.S. 259, 265, 58 L.Ed. 2d 503, 509, 99 S.Ct. 518, 523 (1978), the Court held, "Although ... classifications based on illegitimacy are not subject to 'strict scrutiny,' they nevertheless are invalid under the Fourteenth Amendment if they are not substantially related to permissible state interests." *Accord, Mitchell v. Freuler*, 297 N.C. 206, 254 S.E. 2d 762 (1979). To survive the Court's test, the statute must "not broadly discriminate between legitimates and illegitimates without more, but [be] carefully tuned to alternative considerations." *Mathews v. Lucas*, 427 U.S. 495, 513, 49 L.Ed. 2d 651, 665, 96 S.Ct. 2755, 2766 (1976).

The other jurisdictions which have considered the constitutionality of statutes similar to G.S. 49-14(c)(1) have reached inconsistent results. Those jurisdictions which have upheld such

Cogdell v. Johnson

statutes have generally ruled that a statute of limitations restricting the right of an illegitimate child to bring an action for support against his natural father is not an "impenetrable barrier" to the child's receiving support, but is merely a reasonable and permissible limitation on the child's ability to prove paternity. It is also argued that illegitimate children have no constitutional right to assert paternity at any time during their minority. *See, Thompson v. Thompson*, 285 Md. 488, 404 A. 2d 269 (1979); *Texas Dept. of Human Resources v. Chapman*, 570 S.W. 2d 46 (Tex. Civ. App. 1978); *State ex rel. Krupke v. Witkowski*, 256 N.W. 2d 216 (Iowa 1977); *Cessna v. Montgomery*, 63 Ill. 2d 71, 344 N.E. 2d 447 (1976).

Those jurisdictions which have invalidated such statutes on Equal Protection grounds have generally held that they constitute an overly broad restriction on the rights of illegitimates which in fact does result in an impenetrable barrier to support actions. It has additionally been held that such statutes of limitations conflict with other significant governmental interests of the State. In *J.L.P. v. C.L.B.*, 107 Daily Wash. L. Rep. 401, 406 (Super. Ct. D.C. 1979), the Court stated:

Instead of focusing on presumptions or procedures for proving or disproving parentage, the statute merely uses an arbitrary period of time . . . which "broadly discriminate[s] between legitimates and illegitimates without more," *Trimble v. Gordon, supra,* 430 U.S. at 772. For example, it does not set up logical rebuttable presumptions, such as that established in the Uniform Parentage Act, under which paternity is presumed if the father is named on the child's birth certificate. Nor is there any attempt to correlate a presumption of paternity with the results of medically acceptable blood tests. Such mechanisms for establishing proof of parentage would be far more rationally related to accomplishment of the legitimate governmental purpose of weeding out fraudulent claims than imposition of an arbitrary time limit which bears no rational relationship to the fact of paternity.

Moreover, there is nothing in the statute's time limits which are directly related to its purposes. The mere passage of a certain amount of time before the custodial parent sues for child support has no logical connection with whether the non-custodial putative parent is or is not the actual parent.

The absurdity (and tragedy) of the situation becomes manifest when we consider that under the statute, an out of wedlock parent could voluntarily support his or her child from the time of birth to age ten; the custodial parent could neglect or not need to seek child support for two years but desperately need it when the child turns twelve; and at that point the child would be precluded from ever establishing parentage or receiving support from its parent.

*Accord, Florida v. West,* 378 S. 2d 1220 (Fla. 1979); *Stringer v. Dudoich,* 92 N.M. 98, 583 P. 2d 462 (1978). We find the reasoning of these latter cases to be more persuasive. While we make no finding as to whether a child enjoys a constitutional right to seek support from its parents throughout its minority, there can be no question that the Equal Protection Clause will not permit a State to grant such a right to legitimate children and deny it to illegitimate children. *Gomez v. Perez, supra.*

In the case *sub judice,* defendant argues that G.S. 49-14(c)(1) bears a substantial relationship to the State's interest in preventing the litigation of stale or fraudulent claims. We disagree. As we stated previously, a child is entitled to support from its father throughout its minority. Therefore, a child's claim for such support at any time during its minority can never be said to be stale. Nor is G.S. 49-14(c)(1) substantially related to the State's interest in preventing the litigation of fraudulent claims. We have no reason to believe that the mere passage of time bears a direct relation to the truth of the claim asserted. Moreover, the need of a child to receive adequate support manifestly outweighs the relation the statute of limitations may have to the prevention of fraudulent claims. An especially troublesome aspect of the application of the statute here is that a child is wholly reliant on its mother or the State to bring a claim in its behalf before the statute runs. In further support of our position, it is clear that the limitation stated in G.S. 49-14(c)(1) is inconsistent with the State's interest in preventing, whenever possible, illegitimate children from becoming public charges. *See,* G.S. 49-16(2).

The need for a statute of limitations in civil paternity actions must especially be questioned in light of advances which have recently been made in blood typing, such as the HLA typing test, which in combination with other tests has been determined to be

Cogdell v. Johnson

between 95.4 and 99.4 percent accurate in determining a defendant's lack of paternity. *See*, Kateley, Codere and Maldonado, Blood Testing in Disputed Parentage: The Current Role of HLA Typing, 1 *Clinical Immunology Newsletter* (No. 4, Feb. 1980); Joint AMA-ABA Guidelines: Recent Status of Serologic Testing in Problems of Disputed Parentage, 10 Fam. L. Q. 247 (1976). In light of these considerations, it must be concluded that G.S. 49-14(c)(1) can scarcely be termed a narrow approach to the fraud problem, carefully tuned to alternative considerations, as mandated by the Supreme Court in *Mathews*. The truth of the matter is that the statute presents a broad impenetrable barrier to many illegitimate children who seek support from their natural fathers after their third birthday. It makes no difference that this statute only bars illegitimate children from proving paternity, and does not directly prohibit their obtaining support. Under our laws, to prevent a child from asserting paternity is to prevent it from receiving support from its natural father.

We therefore conclude that G.S. 49-14(c)(1) is not substantially related to any permissible State interest and that it unconstitutionally discriminates against illegitimate children in violation of the Equal Protection Clause of the Constitution of the United States.

Reversed.

Judges MARTIN (Robert M.) and ERWIN concur.