SHARON MOORE *v.* HOWARD MCNAMARA

SUPERIOR COURT GEOGRAPHICAL AREA NO. 6 AT FILE NO. FA6-4663
NEW HAVEN

Memorandum filed April 26, 1984

*Charles P. Costanzo,* for the plaintiff.

*Michele R. Celentano,* for the defendant.

*Michael F. Ross,* assistant attorney general, for the state.

JACKAWAY, J. On December 10, 1978, the plaintiff gave birth to a child. The plaintiff thereafter instituted a paternity action against the defendant on June 15, 1982. The pleadings are closed and the defendant moves for summary judgment on the ground that General Statutes § 46b-160 bars commencement of the present proceeding. On behalf of the plaintiff the state argues that § 46b-160 is unconstitutional.

A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984). In the present case the facts, set out above, are not disputed. Therefore, the court is required to decide whether the defendant is entitled to judgment as a matter of law.

The court is asked to decide the constitutional validity of General Statutes § 46b-160 which provides in relevant part: "No such petition [to establish paternity] shall be brought after three years from the birth of such child." The plaintiff's petition was brought more than three years after the child's birth.

Under Connecticut law all minor children, whether born in wedlock or out of wedlock, are owed a legal duty of support by their parents. General Statutes § 46b-215. This duty of support is enforceable throughout the child's minority. See General Statutes § 46b-215. Connecticut law also makes the father of an illegitimate child responsible for the necessary "support and maintenance of such child." *Faraday* v. *Dube,* 175 Conn. 438, 441, 399 A.2d 1262 (1978). Enforcement of this obligation is predicated upon the establishment of paternity. See General Statutes § 46b-160 and § 46b-172. The General Statutes, furthermore, provide for the filing of a petition which can lead to enforcement of the father's duty of support. With few exceptions, however, the petition must be filed within three years of the child's birth. General Statutes § 46b-160.

There are three exceptions to the latter general rule. If the putative father contributes to the support of an illegitimate child, and later ceases furnishing such support, an action to establish paternity must be brought within three years of the cessation of such payments. General Statutes § 46b-160. In addition, any period during which the putative father is absent from Connecticut is excluded from the computation of the time within which a petition to establish paternity may be filed under § 46b-160. See General Statutes § 52-590. (The time excluded, however, must not exceed seven years.) The other exception is that an action to establish paternity may be maintained within one year following a divorce decree or dissolution judgment which finds any child not to be issue of such marriage. General Statutes § 46b-55. The foregoing "exceptions" consequently extend the limitation period on paternity actions, in some instances, potentially throughout the child's minority.

The practical effect of the statutory scheme, outlined above, is that Connecticut imposes no limitation on the

right of a legitimate child to obtain support from his father, a right which lasts until the child is eighteen years old. General Statutes § 46b-215. An illegitimate child, who does not fall within the purview of the relevant "exceptions," concomitantly, has a right to obtain support from his father until the age of eighteen. General Statutes § 46b-215. But, generally, as a condition precedent to an illegitimate child's right to obtain support, that child must commence a paternity action within three years of birth or forever forfeit the right to obtain that support. General Statutes § 46b-160.

As the foregoing statutory framework reveals, Connecticut truncates an illegitimate child's opportunity to obtain support; General Statutes § 46b-160; while it accords the legitimate child a cause of action for support which persists throughout his minority. See General Statutes § 46b-215. Accordingly, the court must decide whether this differential treatment offends the constitutional guarantee of equal protection under the fourteenth amendment.

In 1968, the United States Supreme Court, for the first time, applied the equal protection clause on behalf of illegitimate children. *Levy* v. *Louisiana,* 391 U.S. 68, 88 S. Ct. 1509, 20 L. Ed. 2d 436 (1968). In a series of decisions following *Levy* the court has subjected statutory classifications based on illegitimacy to an intermediate tier of scrutiny. While illegitimacy-based classifications are not "suspect" or subject to the court's most exacting strict scrutiny test; *Trimble* v. *Gordon,* 430 U.S. 762, 767, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977); the test employed requires more than a determination that there is a rational basis for the classification. Therefore an illegitimacy-based classification will withstand equal protection scrutiny only to the extent that it is "substantially related" to a permissible state interest. *Lalli* v. *Lalli,* 439 U.S. 259, 265, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978).

The court has recently addressed the constitutionality of both a one year and two year limitation period governing suits to establish paternity. *Pickett* v. *Brown,* 462 U.S. 1, 103 S. Ct. 2199, 76 L. Ed. 2d 372 (1983) (Tennessee two year period for bringing paternity action was unconstitutional); *Mills* v. *Habluetzel,* 456 U.S. 91, 102 S. Ct. 1549, 71 L. Ed. 2d 770 (1982) (Texas one year statute of limitations was unconstitutional). The court formulated a two-pronged test to assess whether any particular statute of limitations on the bringing of a paternity action would violate the equal protection clause. First, the limitation period must be sufficiently long to provide a reasonable opportunity to those with an interest in illegitimate children to bring suit on their behalf. *Pickett* v. *Brown,* supra, 12; *Mills* v. *Habluetzel,* supra, 99. Second, any time limitation placed on that opportunity must be substantially related to the state's interest in avoiding the litigation of stale or fraudulent claims. *Pickett* v. *Brown,* supra, 13; *Mills* v. *Habluetzel,* supra, 99–100.

With respect to the first prong the *Pickett* court reasoned that many of the same "practical obstacles" to filing a paternity action within one year after the child's birth; *Mills* v. *Habluetzel,* supra, 100; are still present two years after the child's birth. *Pickett* v. *Brown,* supra, 12. "The mother may experience financial difficulties caused not only by the child's birth, but also by a loss of income attributable to the need to care for the child. Moreover, 'continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child,' " pose the kind of obstacles which compelled the court to find that a two year limitation period does not provide illegitimate children with an adequate opportunity to obtain support. Id.

Indeed, it is significant that Justice O'Connor's concurring opinion in *Mills* v. *Habluetzel,* supra, joined by four other members of the court, suggests that the practical obstacles to the filing of a paternity action may "exist *several years* after the birth of the illegitimate child." (Emphasis added.) *Mills* v. *Habluetzel,* supra, 105. (O'Connor, J., wrote separately because she feared that the court's opinion might be misinterpreted as approving the four year statute of limitations now used in Texas); *Pickett* v. *Brown,* supra, 10–13 (citing O'Connor, J., with approval).

The court, however, has never precisely defined what time limitation period would satisfy the first requirement under *Mills* and *Pickett.* Since the *Mills* decision, other jurisdictions have addressed similar challenges and have reached inconsistent results on what time period would satisfy the first requirement. *Daniel* v. *Collier,* 130 Mich. App. 345, 343 N.W.2d 16 (1983) (Michigan's six year statute constitutional); *Patricia R.* v. *Peter W.,* 120 Misc. 2d 986, 466 N.Y.S.2d 994 (1983) (New York's five year statute is adequate under the first requirement of *Mills* but fails the second requirement); *Oregon ex rel. Adult & Family Services Division* v. *Bradley,* 58 Or. App. 663, 650 P.2d 91 (1982) (Oregon's six year statute unconstitutional—fails both requirements under *Mills*); *Astemborski* v. *Susmarski,* 502 Pa. 409, 466 A.2d 1018 (1983) (six year statute constitutional—six year limit extends beyond the period of the child's first several years, addressed by the court in *Pickett*); *Kentucky* v. *Young,* 10 Fam. L. Rep. (BNA) 1094 (Ky. 1983) (three year statute unconstitutional and fails both requirements under *Mills*). While a six year limitation period may be constitutionally permissible, it is submitted that a three year limitation period is only a small improvement in degree over the two year period at issue in *Pickett.* A three year limitation period, it is submitted, is not of sufficiently long duration to

negate the practical obstacles to filing suit which "may exist *several years* after the birth of the illegitimate child." (Emphasis added.) *Pickett* v. *Brown,* supra, 11. For example, the mother may still feel an attachment to the father and may be reluctant to bring suit. Moreover, the mother may not want to assume the risk that bringing suit will cause the father to cut off all communication with the child. See *Oregon ex rel. Adult & Family Services Division* v. *Bradley,* supra. Additionally, an unwed working mother might be able to shoulder the entire support obligation until the child is five or ten years old. If she then loses her job and for the first time requires financial assistance from the putative father, an action under § 46b-160 to establish paternity would be foreclosed. See *District of Columbia ex rel. W.J.D.* v. *E.M.,* 467 A.2d 457, 463 (D.C. App. 1983) (two year statute unconstitutional). The foregoing considerations, considered together with the "practical obstacles" identified in *Pickett,* it is submitted, compels this court to find that Connecticut's three year limitation period is not sufficiently long to withstand equal protection scrutiny under the first prong of the *Pickett* test.

As to the second prong the court has stated that "[t]he State's interest in avoiding the litigation of stale or fraudulent claims will justify those periods of limitation that are sufficiently long to present a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims." *Mills* v. *Habluetzel,* supra, 99. As noted by the *Mills* court, proof in paternity cases "is often sketchy and strongly contested, frequently turning upon conflicting testimony from only two witnesses." Id., 97. Accordingly, this court is required to decide whether a three year period of limitation is substantially related to the proof problems inherent in paternity cases. The *Pickett* court, citing *Mills,* first stated: "We can conceive of no evidence

essential to paternity suits that will be lost in only [two years], nor is it evident that the passage of [24] months will appreciably increase the likelihood of fraudulent claims." *Pickett* v. *Brown,* supra, 13–14. Accordingly, a two year limitation period could not be justified by the problems of proof surrounding paternity actions. Id.

Secondly, a statutory exception to Tennessee's two year limitation period substantially undermined the state's argument that the limitations period was substantially related to its interest in preventing litigation of stale or fraudulent claims. Under Tennessee law, paternity actions could be brought on behalf of illegitimate children who are, or are likely to become, public charges, at any time prior to the child's eighteenth birthday. The court was unable to find any apparent reason "why claims filed on behalf of illegitimate children who are receiving public assistance when they are more than two years old would not be just as stale, or as vulnerable to fraud, as claims filed on behalf of illegitimate children who are not public charges at the same age." *Pickett* v. *Brown,* supra.

By analogy, the argument that Connecticut is justified in barring the commencement of paternity actions after the child's third birthday, in order to prevent litigation of stale and fraudulent claims, is seriously undermined when one considers that the state allows paternity actions within one year following a divorce decree; General Statutes § 46b-55; and where the state tolls its statute of limitations while the putative father is absent from Connecticut. General Statutes § 46b-160 and § 52-590. It is submitted that the Connecticut statutory scheme is constitutionally defective since the problems of proof inherent in a paternity action are as likely to be present in a suit initiated pursuant to the statutory exceptions to Connecticut's three year limitation period. Accordingly, the three year limitation period is not substantially related to the state's interest in

avoiding stale and fraudulent claims where it permits proof of paternity, in certain recognized cases, more than three years following the child's birth. See generally *Pickett* v. *Brown,* supra.

Moreover, "the strength of the State's interest in preventing the prosecution of stale or fraudulent claims [is] 'undercut by the countervailing state interest in ensuring that genuine claims for child support are satisfied.' " *Pickett* v. *Brown,* supra, 10. In this regard, it is noteworthy that the state of Connecticut is arguing that § 46b-160 is unconstitutional and is asserting only the latter permissible state interest.

The *Pickett* court found, moreover, that "the relationship between a statute of limitations and the State's interest in preventing the litigation of stale or fraudulent paternity claims has become more attenuated as scientific advances in blood testing have alleviated the problems of proof surrounding paternity actions." *Pickett* v. *Brown,* supra, 17; but see *Mills* v. *Habluetzel,* supra, 98 n.4 (advances in blood tests do not negate the state's interest in avoiding stale or fraudulent claims). The court, therefore, stated that advances in blood testing are an "appropriate consideration" in determining whether a limitations period is substantially related to a legitimate state interest. *Pickett* v. *Brown,* supra, 17–18.

The foregoing considerations, it is submitted, now compel this court to find that Connecticut's three year limitation period cannot be justified by the problems of proof surrounding paternity actions. Other jurisdictions which have confronted similar challenges have held that limitations periods of similar duration were not substantially related to a legitimate state interest. *State Department of Health & Rehabilitative Services* v. *West,* 378 So. 2d 1220 (Fla. 1979) (four year statute unconstitutional); *State Department of Revenue* v.

*Wilson,* Mont. , 634 P.2d 172 (1981) (three year statute); *Cogdell* v. *Johnson,* 46 N.C. App. 182, 264 S.E.2d 816 (1980) (three year statute); *Kentucky* v. *Young,* 10 Fam. L. Rep. (BNA) 1094 (Ky. 1983) (three year statute). The above courts held that their respective statute of limitations bore at best a tenuous relationship to the interest of insuring availability of adequate proof on the issue of paternity. It is submitted that Connecticut's three year statute suffers the same constitutional deficiencies and that the three year limitation period under § 46b-160 denies certain illegitimate children equal protection of the laws.

There is no reason to reach the state's equal rights amendment challenge to § 46b-160 since the equal protection challenge is dispositive.

For the reasons set forth above the motion for summary judgment is denied.