# CLARK *v.* JETER

No. 87–5565.   Argued April 19, 1988—Decided June 6, 1988

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Evalynn B. Welling* argued the cause for petitioner. With her on the brief was *Eileen D. Yacknin.*

*Craig McClean* argued the cause for respondent. With him on the brief was *Wendell G. Freeland.**

JUSTICE O'CONNOR delivered the opinion of the Court.

Under Pennsylvania law, an illegitimate child must prove paternity before seeking support from his or her father, and a suit to establish paternity ordinarily must be brought within six years of an illegitimate child's birth. By contrast, a legitimate child may seek support from his or her parents at any time. We granted certiorari to consider the constitutionality of this legislative scheme.

I

On September 22, 1983, petitioner Cherlyn Clark filed a support complaint in the Allegheny County Court of Common Pleas on behalf of her minor daughter, Tiffany, who was born out of wedlock on June 11, 1973. Clark named respondent

---

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union Foundation et al. by *John A. Powell, Helen Hershkoff, Steven R. Shapiro,* and *Stefan Presser;* and for the Women's Legal Defense Fund et al. by *Erwin N. Griswold, Judith L. Lichtman, Donna R. Lenhoff,* and *James D. Weill.*

Gene Jeter as Tiffany's father. The court ordered blood tests, which showed a 99.3% probability that Jeter is Tiffany's father.

Jeter moved to dismiss the complaint on the ground that it was barred by the 6-year statute of limitations for paternity actions.* In her response, Clark contended that this statute is unconstitutional under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. In the alternative, she argued that the statute was tolled by fraudulent and misleading actions of the welfare department, or by threats and assaults by Jeter.

The trial court upheld the statute of limitations on the authority of *Astemborski* v. *Susmarski,* 499 Pa. 99, 451 A. 2d 1012 (1982), vacated, 462 U. S. 1127 (1983), reinstated on remand, 502 Pa. 409, 466 A. 2d 1018 (1983). The Pennsylvania Supreme Court there had considered and rejected constitutional challenges similar to Clark's. The trial court also rejected Clark's argument that the statute should be tolled, specifically finding that any fear that Clark may have had of Jeter had subsided more than six years before she filed her support complaint. Therefore, the trial court entered judgment for Jeter.

Clark appealed to the Superior Court of Pennsylvania, again raising her constitutional challenges to the 6-year statute of limitations. Before the court decided her case, the

---

*Although Jeter's motion referred to § 6704(e), that section had been altered slightly and relabeled as § 6704(b) at the time of the litigation below. See Act of Dec. 20, 1982, No. 326, Art. II, § 201, 1982 Pa. Laws 1409. As amended, the section provided:

"All actions or proceedings to establish the paternity of a child born out of wedlock brought under this section must be commenced within six years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action or proceeding may be commenced at any time within two years of any such contribution or acknowledgement by the reputed father." 42 Pa. Cons. Stat. § 6704(b) (1982) (repealed 1985).

Pennsylvania Legislature enacted an 18-year statute of limitations for actions to establish paternity. Act of Oct. 30, 1985, No. 66, § 1, subch. C, 1985 Pa. Laws 270, codified at 23 Pa. Cons. Stat. § 4343(b) (1985). Pennsylvania thereby brought its law into compliance with a provision of the federal Child Support Enforcement Amendments of 1984 that requires all States participating in the federal child support program to have procedures to establish the paternity of any child who is less than 18 years old. 98 Stat. 1307, 42 U. S. C. § 666(a)(5) (1982 ed., Supp. IV). The Superior Court concluded, however, that Pennsylvania's new 18-year statute of limitations did not apply retroactively, and that it would not revive Clark's cause of action in any event. 358 Pa. Super. 550, 518 A. 2d 276 (1986). It affirmed the trial court's conclusions that the 6-year statute of limitations was constitutional, and that Clark's tolling argument was without merit. Thereafter, the Superior Court denied Clark's motion for reargument. The Pennsylvania Supreme Court denied her petition for allowance of appeal. We granted Clark's petition for certiorari. 484 U. S. 1003 (1988).

## II

Clark's first argument to this Court is that Pennsylvania's 6-year statute of limitations is invalid because it conflicts with the federal Child Support Enforcement Amendments of 1984, which she says require States to adopt retroactive 18-year statutes of limitations in paternity cases. See 42 U. S. C. § 666(a)(5) (1982 ed., Supp. IV). Because this argument raises an issue of statutory interpretation, we ordinarily would address it before reaching the constitutional claims. *Blum* v. *Bacon*, 457 U. S. 132, 137 (1982); see *Townsend* v. *Swank*, 404 U. S. 282, 285, 291 (1971). Having reviewed the record, however, we find that Clark did not adequately present a federal pre-emption argument to the lower courts. It is our practice, when reviewing decisions by state courts, not to decide federal claims that were not

"pressed or passed upon" below. *Bankers Life & Casualty Co.* v. *Crenshaw,* 486 U. S. 71, 79–80 (1988).

The Pennsylvania Legislature passed the 18-year statute of limitations on October 30, 1985. At that time, Clark already had filed her brief on appeal to the Superior Court. Clark immediately suggested a remand to determine the retroactivity of the new Pennsylvania statute. But the Superior Court instead itself decided that the 6-year statute of limitations would continue to apply to cases like Clark's. The court reasoned that, under Pennsylvania law, a statute is retroactive only if the legislature clearly and manifestly so intends, and it found insufficient evidence of such an intent. The decision did not address the relevance of the federal Child Support Enforcement Amendments to the continuing validity of the 6-year statute of limitations. 358 Pa. Super., at 553–555, 518 A. 2d, at 278.

In her application for reargument in the Superior Court and in her petition for appeal to the Pennsylvania Supreme Court, Clark argued that the Superior Court had overlooked Pennsylvania cases which had applied similar statutes of limitations retroactively, as well as indications that the federal Child Support Enforcement Amendments required States to adopt retroactive 18-year statutes of limitations or their equivalent. See 42 U. S. C. § 666(a)(5) (1982 ed., Supp. III); 50 Fed. Reg. 19608, 19631 (1985). But Clark did not expressly assert that the 6-year statute of limitations was preempted by the new federal law. We interpret Clark's argument to be that the Pennsylvania Legislature intended to comply with the new conditions on the federal spending program, which arguably showed that it clearly and manifestly intended its new statute to be retroactive. This question of how to interpret the Pennsylvania statute ultimately is a matter of state law. We find that Clark's argument below was not adequate to raise a federal pre-emption claim. Accordingly, we do not address it here and proceed to her equal protection claim.

In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment, U. S. Const., Amdt. 14, § 1, we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. *San Antonio Independent School Dist. v. Rodriguez*, 411 U. S. 1, 17 (1973); cf. *Lyng v. Automobile Workers*, 485 U. S. 360, 370 (1988). Classifications based on race or national origin, *e. g., Loving v. Virginia*, 388 U. S. 1, 11 (1967), and classifications affecting fundamental rights, *e. g., Harper v. Virginia Bd. of Elections*, 383 U. S. 663, 672 (1966), are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy. See, *e. g., Mississippi University for Women v. Hogan*, 458 U. S. 718, 723–724, and n. 9 (1982); *Mills v. Habluetzel*, 456 U. S. 91, 99 (1982); *Craig v. Boren*, 429 U. S. 190, 197 (1976); *Mathews v. Lucas*, 427 U. S. 495, 505–506 (1976).

To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective. Consequently we have invalidated classifications that burden illegitimate children for the sake of punishing the illicit relations of their parents, because "visiting this condemnation on the head of an infant is illogical and unjust." *Weber v. Aetna Casualty & Surety Co.*, 406 U. S. 164, 175 (1972). Yet, in the seminal case concerning the child's right to support, this Court acknowledged that it might be appropriate to treat illegitimate children differently in the support context because of "lurking problems with respect to proof of paternity." *Gomez v. Perez*, 409 U. S. 535, 538 (1973).

This Court has developed a particular framework for evaluating equal protection challenges to statutes of limitations

that apply to suits to establish paternity, and thereby limit the ability of illegitimate children to obtain support.

"First, the period for obtaining support . . . must be sufficiently long in duration to present a reasonable opportunity for those with an interest in such children to assert claims on their behalf. Second, any time limitation placed on that opportunity must be substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims." *Mills* v. *Habluetzel*, 456 U. S., at 99–100.

In *Mills*, we held that Texas' 1-year statute of limitations failed both steps of the analysis. We explained that paternity suits typically will be brought by the child's mother, who might not act swiftly amidst the emotional and financial complications of the child's first year. And, it is unlikely that the lapse of a mere 12 months will result in the loss of evidence or appreciably increase the likelihood of fraudulent claims. *Id.*, at 100–101. A concurring opinion in *Mills* explained why statutes of limitations longer than one year also may be unconstitutional. *Id.*, at 102–106 (O'CONNOR, J., joined by Burger, C. J., and BRENNAN and BLACKMUN, JJ., and joined as to Part I by Powell, J., concurring). First, the State has a countervailing interest in ensuring that genuine claims for child support are satisfied. Second, the fact that Texas tolled most other causes of action during a child's minority suggested that proof problems do not become overwhelming during this period. Finally, the practical obstacles to filing a claim for support are likely to continue after the first year of the child's life.

In *Pickett* v. *Brown*, 462 U. S. 1 (1983), the Court unanimously struck down Tennessee's 2-year statute of limitations for paternity and child support actions brought on behalf of certain illegitimate children. Adhering to the analysis developed in *Mills*, the Court first considered whether two years afforded a reasonable opportunity to bring such suits. The Tennessee statute was relatively more generous than the

Texas statute considered in *Mills* because it did not limit actions against a father who had acknowledged his paternity in writing or by furnishing support; nor did it apply if the child was likely to become a public charge. Nevertheless, the Court concluded that the 2-year period was too short in light of the persisting financial and emotional problems that are likely to afflict the child's mother. Proceeding to the second step of the analysis, the Court decided that the 2-year statute of limitations was not substantially related to Tennessee's asserted interest in preventing stale and fraudulent claims. The period during which suit could be brought was only a year longer than the period considered in *Mills*, and this incremental difference would not create substantially greater proof and fraud problems. Furthermore, Tennessee tolled most other actions during a child's minority, and even permitted a support action to be brought on behalf of a child up to 18 years of age if the child was or was likely to become a public charge. Finally, scientific advances in blood testing had alleviated some problems of proof in paternity actions. For these reasons, the Tennessee statute failed to survive heightened scrutiny under the Equal Protection Clause.

In light of this authority, we conclude that Pennsylvania's 6-year statute of limitations violates the Equal Protection Clause. Even six years does not necessarily provide a reasonable opportunity to assert a claim on behalf of an illegitimate child. "The unwillingness of the mother to file a paternity action on behalf of her child, which could stem from her relationship with the natural father or . . . from the emotional strain of having an illegitimate child, or even from the desire to avoid community and family disapproval, may continue years after the child is born. The problem may be exacerbated if, as often happens, the mother herself is a minor." *Mills, supra,* at 105, n. 4 (O'CONNOR, J., concurring). Not all of these difficulties are likely to abate in six years. A mother might realize only belatedly "a loss of income attributable to the need to care for the child," *Pickett,*

*supra*, at 12. Furthermore, financial difficulties are likely to increase as the child matures and incurs expenses for clothing, school, and medical care. See, *e. g.*, *Moore* v. *McNamara*, 40 Conn. Supp. 6, 11, 12, 478 A. 2d 634, 637 (1984) (invalidating a 3-year statute of limitations). Thus it is questionable whether a State acts reasonably when it requires most paternity and support actions to be brought within six years of an illegitimate child's birth.

We do not rest our decision on this ground, however, for it is not entirely evident that six years would necessarily be an unreasonable limitations period for child support actions involving illegitimate children. We are, however, confident that the 6-year statute of limitations is not substantially related to Pennsylvania's interest in avoiding the litigation of stale or fraudulent claims. In a number of circumstances, Pennsylvania permits the issue of paternity to be litigated more than six years after the birth of an illegitimate child. The statute itself permits a suit to be brought more than six years after the child's birth if it is brought within two years of a support payment made by the father. And in other types of suits, Pennsylvania places no limits on when the issue of paternity may be litigated. For example, the intestacy statute, 20 Pa. Cons. Stat. § 2107(3) (1982), permits a child born out of wedlock to establish paternity as long as "there is clear and convincing evidence that the man was the father of the child." Likewise, no statute of limitations applies to a father's action to establish paternity. *In re Mengel*, 287 Pa. Super. 186, 429 A. 2d 1162 (1981). Recently, the Pennsylvania Legislature enacted a statute that tolls most other civil actions during a child's minority. 42 Pa. Cons. Stat. § 5533(b) (Supp. 1987). In *Pickett* and *Mills*, similar tolling statutes cast doubt on the State's purported interest in avoiding the litigation of stale or fraudulent claims. 462 U. S., at 15–16; 456 U. S., at 104–105 (O'CONNOR, J., concurring); *id.*, at 106 (Powell, J., concurring in judgment). Pennsylvania's tolling statute has the same implications here.

A more recent indication that Pennsylvania does not consider proof problems insurmountable is the enactment by the Pennsylvania Legislature in 1985 of an 18-year statute of limitations for paternity and support actions. 23 Pa. Cons. Stat. § 4343(b) (1985). To be sure the legislature did not act spontaneously, but rather under the threat of losing some federal funds. Nevertheless, the new statute is a tacit concession that proof problems are not overwhelming. The legislative history of the federal Child Support Enforcement Amendments explains why Congress thought such statutes of limitations are reasonable. Congress adverted to the problem of stale and fraudulent claims, but recognized that increasingly sophisticated tests for genetic markers permit the exclusion of over 99% of those who might be accused of paternity, regardless of the age of the child. H. R. Rep. No. 98–527, p. 38 (1983). This scientific evidence is available throughout the child's minority, and it is an additional reason to doubt that Pennsylvania had a substantial reason for limiting the time within which paternity and support actions could be brought.

We conclude that the Pennsylvania statute does not withstand heightened scrutiny under the Equal Protection Clause. We therefore find it unnecessary to reach Clark's due process claim. The judgment of the Superior Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*