GORSUCH, Circuit Judge,
concurring.
I confess some uncertainty about the level of scrutiny the Supreme Court wishes us to apply to this contribution limit challenge, but I harbor no question about the outcome we must reach. My colleagues are surely right that, as applied, Colorado’s statutory scheme offends the Constitution’s equal protection guarantee, whatever plausible level of scrutiny we might deploy. At the same time, it’s no less clear to me that, with a little effort, Colorado could have achieved its stated policy objectives (and might still) without offending the national charter.
In at least one important way Colorado discriminates against minor party contributors. An example illustrates the problem: contributors to state legislative races can make two separate $200 contributions ($400 in all) to major party candidates who face no primary opposition. One of these $200 contributions may be nominally attributed to the (uneontested) primary, the other to the general election, but under Colorado’s statutory scheme all the money can be spent in aid of the general election contest. Meanwhile, contributors to minor party candidates who face no opposition for their party’s nomination can make only one $200 contribution. So it is that, in the particular situation we face, major party contributors can channel twice as much money to their favorite candidate in the general election as minor party contributors can.
The minor party contributors who bring this equal protection challenge suggest (at least in places) that we should consider applying strict scrutiny to this particular aspect of Colorado’s statutory scheme. They say that contributing in elections implicates a fundamental liberty interest, that Colorado’s scheme favors the exercise of that fundamental liberty interest by some at the expense of others, and for this reason warrants the most searching level of judicial scrutiny. For my part, I don’t doubt this line of argument has much to *931 recommend it. The trouble is, we have no controlling guidance on the question from the Supreme Court. And in what guidance we do have lie some conflicting cues.
No one before us disputes that the act of contributing to political campaigns implicates a “basic constitutional freedom,” one lying “at the foundation of a free society” and enjoying a significant relationship to the right to speak and associate — both expressly protected First Amendment activities. Buckley v. Valeo, 424 U.S. 1, 25, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per cu-riam). Even so, the Court has yet to apply strict scrutiny to contribution limit challenges — employing instead something pretty close but not quite the same thing. See id. (using a “closely drawn” rather than a strict scrutiny standard); Davis v. FEC, 554 U.S. 724, 740 n. 7, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008); Republican Party of N.M. v. King, No. 12-2015, 741 F.3d 1089, 1092-93, 2013 WL 6645428 (10th Cir. Dec. 18, 2013). Some have questioned whether contribution limits should be subject to strict scrutiny. See, e.g., Randall v. Sorrell, 548 U.S. 230, 266-67, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006) (Thomas, J., concurring in the judgment); Buckley, 424 U.S. at 241-45, 96 S.Ct. 612 (Burger, C.J., concurring in part and dissenting in part). The Court itself now has under consideration a case in which it may (or may not) choose to address the question. See McCutcheon v. FEC, — U.S. -, 133 S.Ct. 1242, 185 L.Ed.2d 177 (2013) (noting probable jurisdiction in a challenge to aggregate contribution limits; oral argument was held October 8, 2013). But, to date at least, the Court hasn’t gone so far. See Citizens United v. FEC, 558 U.S. 310, 359, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).
Of course, all these teachings have come in the context of First Amendment challenges to contribution limits — and in this appeal we are asked to decide a Fourteenth Amendment claim. In the Fourteenth Amendment’s equal protection context, the Supreme Court has clearly told us to apply strict scrutiny not only to governmental classifications resting on certain inherently suspect grounds (para-digmatically, race) but also governmental “classifications affecting fundamental rights.” Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Still, some thoughtful judges have questioned whether it is appropriate to lift what is an admittedly “fundamental right” found in the First Amendment and analyze its infringement here, in the Fourteenth Amendment context, shorn of what the Court has said about the appropriate level of scrutiny applicable to that right in its native doctrinal environment. Isn’t the nature of the interest at issue (its “fundamental-ness”) closely tied to the level of scrutiny afforded that interest in its doctrinal home? Can an interest become more potent (“more” fundamental) when viewed through the lens of equal protection analysis? See, e.g., Wagner v. FEC, 854 F.Supp.2d 83, 95-97 (D.D.C.2012) (Boasberg, J.); Ill. Liberty PAC v. Madigan, 902 F.Supp.2d 1113, 1125-26 (N.D.Ill.2012) (Feinerman, J.).
To these questions, I can imagine this (potential) reply. The plaintiffs before us don’t complain that Colorado’s contribution limits violate their First Amendment rights because, say, the limits are too low for everyone. Instead, they complain that the State’s contribution limits violate the Fourteenth Amendment’s equal protection guarantee by discriminating against minor party contributors. And whatever level of scrutiny should apply to equal infringements of the right to contribute in the First Amendment context, the strictest degree of scrutiny is warranted under Fourteenth Amendment equal protection doctrine when the government proceeds to *932 discriminate against some persons in the exercise of that right. On this account, there is something distinct, different, and more problematic afoot when the government selectively infringes on a fundamental right. Cf. Davis, 554 U.S. at 743-44, 128 S.Ct. 2759 (suggesting that even in the First Amendment context “imposing different contribution ... limits on candidates vying for the same seat” may call out for especially heightened scrutiny).
*
While there may be room in this case to debate the appropriate level of scrutiny, there’s no room to debate the outcome. The various tiers of scrutiny that occupy so much attention in contemporary constitutional litigation — rational basis, strict scrutiny, something(s) in between — may sometimes provide important heuristic help by illuminating the underlying question whether the State has violated the text of the Equal Protection Clause (or the First Amendment or some other constitutional guarantee). But this isn’t one of those cases. Whatever level of scrutiny one might reasonably apply here — even spotting (without in any way granting) Colorado its wish that we lift Buckley’s somewhat more relaxed level of scrutiny from its First Amendment home and plunk it down into this Fourteenth Amendment equal protection setting — the State’s statutory scheme still pretty clearly flunks.
In Buckley, the Supreme Court held that contribution limits must be “closely drawn to avoid unnecessary abridgement of associational freedoms.” 424 U.S. at 25, 96 S.Ct. 612. But the Court also recognized that a state’s interest in preventing political corruption and its appearance can (sometimes) satisfy this standard. See id. at 25-29, 96 S.Ct. 612; Citizens United, 558 U.S. at 345, 130 S.Ct. 876. Recognizing this line of defense may represent its best available lifeline, Colorado insists in its brief (though ever so briefly, just one paragraph in all) that its regulatory scheme is all about warding off corruption, or at least corruption’s appearance. Yet the State never even tries to tell us how those interests might be served by a scheme that discriminates in favor of major party contributors. Let alone introduce evidence to support such an argument. All we have is one stray, if insistent, assertion found in a lawyer’s brief.
To be sure, Colorado tries a separate line of defense, suggesting that its discriminatory contribution scheme is justified not only because of corruption but also because of cost. Under Colorado law, major party candidates must always participate in primaries. Even when unchallenged. Meanwhile, under Colorado law minor parties may not conduct primaries when only one candidate seeks the nomination. Because even unchallenged primaries can be expensive, the State reasons, major party candidates who face no challenge for the nomination need and deserve more money than similarly situated minor party counterparts.
This argument bears no shortage of curiosities, but consider just these two. First, can a state really justify unequal treatment because of a “problem” of its own creation? After all, to the extent unchallenged major party candidates may incur more costs because they have to participate in primaries (an essential factual premise for which Colorado has identified no evidence in our record), that’s only because state statutory law requires them to do so. Second, what does the State’s proffered rationale have to do with the rule it seeks to defend? Even if we accept for argument’s sake the notion that major party candidates “need” more money to secure their parties’ nominations because *933 of the primary election process, that speaks only to the primary election. Meanwhile, the challenge in this case focuses on the fact Colorado’s regulatory regime allows major party contributors greater influence in the general election. The State’s rationale and rule just don’t jibe: it supplies a possible rationale for higher contribution limits for major party candidates at the primary election stage but the challenge in this case focuses on the fact the State effectively allows higher contributions to major party candidates at the general election stage.
When it really comes down to it, the only reason I can imagine for Colorado’s challenged regulatory scheme is a bald desire to help major party candidates at the expense of minor party candidates. Whether that rationale could save Colorado’s scheme seems to me highly doubtful. Of course, the Supreme Court has suggested that states may enact “reasonable election regulations” designed to foster a two-party system. Timmons v. Twin Cities Area New Party, 520 U.S. 351, 367, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997). But the Court has never gone so far as to suggest the states may pursue that interest by discriminating against contributors based on their political allegiances. Cf. id. (a state’s interest in a two-party system “does not permit [it] to completely insulate the two-party system from minor parties’ or independent candidates’ competition and influence”). Neither has Colorado had the audacity to suggest that we should uphold its regime on this basis — and when deciding whether a law satisfies strict scrutiny or Buckley’s slightly less demanding standard, this court is obliged to assess the law only in light of the interests the State has sought to pursue, not those it hasn’t. See, e.g., Nixon v. Shrink Mo. Gov’t PAC, 528 U.S. 377, 387-88, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (“[U]nder Buckley’s standard of scrutiny, a contribution limit involving significant interference with associational rights could survive if the Government demonstrated that contribution regulation was closely drawn to match a sufficiently important interest.” (emphasis added) (citations and quotation marks omitted)).
*
Having said this much, it is worth pausing to emphasize what isn’t said in these pages. Nothing in what I’ve suggested or what the court holds intimates that Colorado must adopt a per-election-cycle rather than a per-election approach to the regulation of campaign contributions. The State represents that its constitution requires some sort of statutory scheme regulating campaign contributions on a per-election basis (disaggregating primary and general election contributions and capping them separately) rather than on a per-cycle basis (aggregating the two steps in one overall contribution limit). If we strike down its current statutory regime, Colorado says it worries its constitutional command may be imperiled too. But such fears are misplaced. The fact that Colorado’s current statutory per-election scheme runs afoul of the federal equal protection guarantee doesn’t mean all will. The federal government regulates campaign contributions on a per-election basis and manages to do so without any of the discrimination found in Colorado statutory law. Perhaps the State might follow this model or some other. What we hold today is limited but no less essential for it: a state cannot adopt contribution limits that so clearly discriminate against minority voices in the political process without some “compelling” or “closely drawn” purpose — and Colorado has articulated none.