**ASSOCIATION OF SURROGATES AND SUPREME COURT REPORTERS WITHIN THE CITY OF NEW YORK, Mary O'Leary, President; Citywide Association of Law Assistants, Barbara Brown, President; Court Attorneys Association of the City of New York, Robert A. Mulhall, President; Court Officers Benevolent Association of Nassau Co., Jeffrey Pollack, President; District Council 37, American Federation of State, County and Municipal Employees & Local 1070, Paul Shelkin, President; Local 704, Service Employees International Union, John Walsh, President; New York State Supreme Court Officers Association, ILA, Local 2013, AFL–CIO John McKillop, President; Ninth Judicial District Court Employees Association, Martin Sharp, President; Suffolk Co. Court Employees Association, Inc., Thomas F. McGuinness, President; the Communication Workers of America, AFL–CIO, Local 1180, Arthur Cheliotes, President; Civil Service Forum, Local 300, SEIU, Salvatore Cangiarella, President; Janet Foster, Susan Glasbrenner, Michael Sullivan, David Richman, Greg Snigor, James DiNapoli, William Rosario, Abel Peltro, George F. Berghorn, Lisa Rosenzweig and Michael Smith, Plaintiffs,**

v.

**STATE OF NEW YORK; Edward V. Regan, as Comptroller of the State of New York; Robert Abrams, as Attorney General of the State of New York; Matthew T. Crosson, as Chief Administrator of the Unified Court System and the State of New York Unified Court System, Defendants.**

**No. 90 Civ. 6522 (RPP).**

United States District Court, S.D. New York.

Oct. 26, 1990.

Schlachter & Mauro by David Schlachter, Commack, N.Y., for plaintiffs.

Michael Colodner by Patricia P. Satterfield, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is a declaratory judgment action seeking to declare unconstitutional Section 375 of Chapter 190 of the Laws of New York of 1990 which establishes a lag payroll for nonjudicial employees of the Unified Court System hired on or after April 7, 1983. Plaintiffs by order to show cause moved for a preliminary injunction pursuant to Fed.R.Civ.P. 65 enjoining defendants from implementing the law on November 7, 1990 and directing that they continue to pay plaintiffs in the same manner as currently. On the return date the parties agreed that there were no issues of fact and that the Court could also treat this as a motion and cross-motion for summary judgment. For the reasons set forth below, plaintiffs' motions are denied and defendants' motion for summary judgment is granted.

## BACKGROUND

Section 375 of Chapter 190 provides:

b. (1) Notwithstanding the provisions of subdivision a of this section or of section 200 of the state finance law, commencing with the last bi-weekly payroll period ending at least fourteen days before March 31, 1991 for each nonjudicial officer or employee, the salary or wages of such officer or employee shall be payable by the state two weeks after they shall have become due. Until such time, an alternative procedure for payment of the salaries and wages, to be determined by the comptroller, may be implemented in lieu of the procedure specified in subdivision 1 of such section 200 or in other provisions of law. The procedures set forth in this paragraph (including any alternative procedure determined by the comptroller) shall remain in effect until the state and an employee organization representing nonjudicial officers and employees who are in positions which are in collective negotiating units established pursuant to article 14 of the civil service law enter into an agreement providing otherwise for the payment of salaries and wages to such officers and employees.

(2) The provisions of paragraph 1 of this subdivision shall not apply to any alternative procedure for the payment of salaries and wages to nonjudicial officers and employees that was adopted pursuant to law and in effect immediately preceding the effective date of this subdivision.

Act approved May 25, 1990, ch. 190, 1990 N.Y. Laws 375.

On June 18, 1990, the state comptroller determined in order to implement Section 375 that, commencing November 7, 1990, affected employees will be paid nine-days' salary rather than ten-days' salary in each pay period for ten two-week pay periods. *See* Crosson Aff., Exh. C. Thus during the 1990–91 fiscal year ending March 31, 1991, employees will be paid for 50 rather than 52 weeks of employment. The two weeks' pay withheld would be repaid to the affected employees upon termination of their employment at the rate applicable to them at that time. This so-called lag payroll system under present state parlance has been applicable to state employees other than those in the Unified Court System for several years.

Each of the eleven plaintiff labor organizations is party to a collective bargaining agreement with the State of New York Unified Court System which extends for a three-year period and which establishes compensation for nonjudicial employees.

Employees hired on or after April 7, 1983 are currently paid every second Wednesday for the two-week period which ends on the date of payment. Plaintiffs claim that imposition of a lag payroll system under Section 375 of Chapter 190 violates the Contract Clause, Article I, Section 10, clause 1 and the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution.

## DISCUSSION

In this Circuit, a party seeking preliminary injunctive relief must show:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). Because plaintiffs in this action have failed to demonstrate either a likelihood of success on the merits or serious questions as to the merits combined with a balance of hardships in their favor, their motion for a preliminary injunction is denied.

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because the matter presented does not raise any issues of fact, the Court denies plaintiffs' motion for summary judgment and grants summary judgment in favor of defendants.

### 1. Contract Clause Challenge

■ Plaintiffs allege that Section 375 abrogates the terms of plaintiffs' eleven collective bargaining agreements each of which contain a provision that:

> Bi-weekly salaries will be computed on the basis of ten working days.

*See e.g.*, Complaint, Exh. A. at 134. This contractual provision is read in conjunction with Section 200(1) of the State Finance Law which mandates that "[t]he salaries of all officers of the state and the wages of all employees thereof shall be due from and payable by the state bi-weekly...." N.Y. State Fin.Law § 200(1) (McKinney 1989). Plaintiffs thus assert a contractual right to continue being paid every second Wednesday for the ten working days comprising the preceding pay period and that being paid for only nine of those days under a lag payroll system is an unconstitutional legislative impairment of contract.

Defendants argue that there is in fact no contractual impairment. This Court agrees. Each of the collective bargaining agreements at issue also contains the following language as required by N.Y.Civ. Serv.Law § 204–a(1) (McKinney 1983):

> "It is agreed by and between the parties that any provision of this agreement requiring legislative action to permit its implementation by amendment of law or by providing the additional funds therefor, shall not become effective until the appropriate legislative body has given approval."

A fair interpretation of this statutory language is that the compensation sections of the collective bargaining agreements are provisions which "requir[e] legislative action to permit [their] implementation ... by providing the additional funds therefor" because they require annual legislative appropriations in each fiscal year covered by the agreement. *See* N.Y. Const. art 7, § 7 ("No money shall ever be paid out of the state treasury ... except in pursuance of an appropriation by law....").

Plaintiffs argue that the only legislative "approval" required under § 204–a(1) is the legislature's ratification of the terms of the collective bargaining agreements. *See, e.g.*, Act of Dec. 29, 1988, ch. 787, 1988 N.Y.Laws 1670 (McGuinness Aff., Exh. A). Plaintiffs take the position that once it ratifies the agreements, the legislature is bound to make sufficient appropriations to meet the contractual commitments. The Court rejects this argument.

There is ample support for the Court's interpretation of § 204–a(1) in the legislative history. Section 204–a(1) was not part of the original Taylor Law enacted in 1967 but was added as an amendment in 1969. The purpose of the amendment was:

> [to] obviate confusion as to the effect of an agreement between an employer and employee organization by making clear . . . that legislative action is needed before the agreement becomes effective as to those provisions requiring legislative approval such as, for example, the appropriation of funds for salaries.

Legislative Memoranda, Senate Rules Committee at 2365 (1969). This language is susceptible of but one meaning—that legislative appropriations are necessary before compensation or salary provisions of collective bargaining agreements become effective.

The parties do not dispute that for fiscal year 1990–91 the legislature's appropriation contemplated use of a lag payroll system. The Report of Fiscal Committee on the Executive Budget utilized a lag payroll provision to adjust the Court System's budget prior to passage of the appropriation for the Court System. *See* Crosson Aff., Exh. B. The legislature passed Section 375 of Chapter 190 as companion legislation to ensure that the adjustment was effectuated in that manner. No contractual impairment arises from the legislature's imposition of a lag payroll system because the compensation provisions of the collective bargaining agreements did not become effective until after this legislation was enacted and the appropriation was passed.[1] *See Texaco, Inc. v. Short*, 454 U.S. 516, 531, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982) (statute cannot unconstitutionally impair a contractual obligation that does not exist at the time of the statutory enactment).

■ If the Court's interpretation of § 204 is incorrect, it is necessary to consider whether the Contract Clause will have been violated as plaintiffs assert. Under *United States Trust Co. v. New Jersey*, 431 U.S. 1, 25, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977), an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. The state's determination of reasonableness and necessity, however, is accorded less deference when a state impairs a public rather than private contract. *Id.* at 26, 97 S.Ct. at 1519–20.

Even applying this stricter standard, it is apparent in this case that the impairment was a reasonable and necessary one. The state has faced and still is facing a budget crisis. In submitting the Court System's budget request for 1990–91, the Chief Administrator acknowledged "the state's precarious fiscal condition." Crosson Aff. ¶ 4 and Exh. A. The legislature had a legitimate interest in adjusting its fiscal allocations to the judicial branch to allow for increases in trial capacity and related support staff necessitated by the drug crisis while at the same time respecting other fiscal constraints on the state. *Id.* ¶¶ 4–6. Section 375 was a reasonable method of accomplishing these goals in the manner envisioned by the Fiscal Committee on the Executive Budget. *Id.* Exh. B. *See also Kirshner v. United States*, 603 F.2d 234, 239 (2d Cir.1978) (no Contract Clause violation where state's purpose in enacting legislation modifying contract rights was to protect the fiscal integrity of the City of New York), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979).

### 2. Due Process and Equal Protection Challenges

Plaintiffs contend that the lag payroll system violates the Equal Protection clause

---

1. Plaintiffs' reliance on *Jefferson County Bd. of Supervisors v. New York State Pub. Employment Relations Bd.*, 44 A.D.2d 893, 355 N.Y.S.2d 681 (App.Div.1974), *aff'd*, 36 N.Y.2d 534, 369 N.Y.S.2d 662, 330 N.E.2d 621 (1975), for the proposition that a public employer is forbidden from violating the terms of a collective bargaining agreement by refusing to appropriate funds is misplaced. The employer's conduct in *Jefferson County* was initially found to be an executive rather than legislative abrogation of contract rights. *See In re Jefferson County Bd. of Supervisors*, 6 N.Y.P.E.R.B. 3063, 3065 (1973).

of the Fourteenth Amendment because Section 375 applies only to nonjudicial employees of the Unified Court System. Plaintiffs also appear to allege both substantive and procedural due process violations.

■ Rational basis review applies to both the equal protection and substantive due process claims. Since Section 375 neither burdens fundamental constitutional rights nor creates a suspect classification,[2] the statute need only be rationally related to legitimate government objectives. *See Williamson v. Lee Optical Co.,* 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955); *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300–01, 36 L.Ed.2d 16 (1972). Having found the lag payroll provision both reasonable and necessary under the Contract Clause, the Court cannot say that Section 375 fails to satisfy the rational basis test.

■ The Court also fails to detect a violation of procedural due process absent a showing by plaintiffs of clear entitlement every second Wednesday to bi-weekly payment of salary for the ten preceding work days. *See S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 968–70 (2d Cir.1988). Neither the computation provisions of the collective bargaining agreements nor N.Y. State Fin.Law § 200(1) create such an entitlement given their dependency on legislative appropriations under N.Y.Civ. Serv.Law § 204–a(1).

## CONCLUSION

Because plaintiffs have failed to make the requisite showing, plaintiffs' motion for preliminary injunctive relief is denied. Because there exist no issues of fact plaintiffs' motion for summary judgment is de-

---

**2.** Heightened scrutiny is only required in reviewing the constitutionality of statutes which make distinctions based on the suspect classes of race and national origin and the quasi-sus-

nied and defendants' cross-motion is granted.

IT IS SO ORDERED.

pect classes of legitimacy and gender. *See Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988) (collecting cases).