82

Bernard J. and Kathleen M.
TWOREK, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 98–531T.

United States Court of Federal Claims.

Feb. 15, 2000.

Robert E. Dallman, Milwaukee, Wisconsin, attorney of record for plaintiffs.

Benjamin C. King, Jr., Washington, D.C., with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## OPINION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

In this case, Bernard and Kathleen Tworek of Hayward, Wisconsin, seek a refund of income taxes paid to the Internal Revenue Service ("IRS") for income generated from unauthorized gambling sponsored by them at their establishments. Pursuant to the Internal Revenue Code, business operators of a gambling enterprise pay two separate yearly taxes on their wagering income, *i.e.*, one as a percentage of receipts and one as a flat fee. 26 U.S.C. §§ 4401, 4411 (1995). The rate of the two taxes is based on whether the activity is state authorized. *Id.* If the gambling is *authorized* in the state in which it occurs, the IRS levies a $50 yearly fee and a 0.25% tax on wage receipts. *Id.* Those amounts are stepped up to $500 and 2.00%, respectively, if the wage activity is not legal or authorized in the state. *Id.*

As a result of the administrative determination, the IRS determined that plaintiffs' gambling activity in Hayward, Wisconsin, was unauthorized by the State of Wisconsin and, therefore, levied against them the two higher taxes. The Tworeks have paid at least a portion of these taxes and currently seek a refund of the difference between the higher and lower rates. According to the plaintiffs, their gambling should be considered authorized by the state because the Wisconsin statute prohibiting it is unconstitutional and, thus, invalid. Although not relevant to this instant motion, the Tworeks additionally argue in their papers that some of their activity deemed gambling by the IRS was not actual wagering. By their partial summary judgment motion, plaintiffs request this court to hold that the Wisconsin statute, proscribing their gambling, is unconstitutional because it carries suspect classifications that favor Native–Americans and other groups over them.

The government responds with case law supporting the constitutionality of the Wisconsin statute as a valid exercise of that state's legislative power. Furthermore, it argues that the Indian Gaming Regulatory Act ("IGRA") creates the racial classification, not the Wisconsin statute, and that the IGRA has been upheld by the Supreme Court in recent decisions. Defendant, therefore, requests that plaintiffs' partial summary judgement motion be denied in its entirety. Additionally, defendant has filed a counterclaim against plaintiffs for additional unpaid taxes, which are not part of this instant motion. For the reasons stated herein, the court finds that, as a matter of law, plaintiffs' motion should be denied.

### BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs, Bernard and Kathleen Tworek, are a married couple living and operating businesses in Hayward, Wisconsin. During the relevant times herein, Kathleen Tworek owned the Wildlife Museum and Bar,

and Bernard Tworek owned, *inter alia,* the Moccasin Bar, both located in Hayward. At various times, both establishments offered cards for sale which provided the holder the opportunity to win a cash prize. Plaintiffs and defendant disagree as to the collectibility of these cards and, while such resolution is pertinent to the main issue in this case, it is irrelevant to deciding this instant motion for partial summary judgment, *i.e.,* the constitutional issue.

Under Wisconsin law, the Tworeks' gambling activities are considered lotteries. Wis. Stat. § 945.01 (1997).[1] In the State of Wisconsin, lotteries that are not run by the state cannot be conducted by private individuals, except by Native Americans on federal reservations. Wis. Stat. § 945.02 (1997); Wis. Const. Art. 4, § 24 (1999);[2] Indian Gaming Regulatory Act, 25 U.S.C.A. § 2710. This is so because Indian reservations are considered federal lands and, therefore, federal law takes precedence over local law where congressional intent of such is obvious. *See Gaming Corporation of America v. Dorsey & Whitney,* 88 F.3d 536 (8th Cir.1996). The Tworeks' lottery was not conducted either by the state or on a reservation, thus, was not authorized under Wisconsin state law.

Consequently, the IRS assessed $2,950 in tax, interest, and penalties against the Tworeks pursuant to 26 U.S.C. §§ 4411(a) and 4401. In November, 1997 the Tworeks remitted checks totaling the $2,950 tax assessed, along with a claim for refund of those amounts. In February 1998, the IRS denied the Tworeks' refund claims.

Following thereon, plaintiffs filed this action on June 19, 1998, alleging in their complaint two counts each for overpayment of the flat fee and the percentage taxes pursuant to U.S.C. §§ 4401 and 4411. Defendant filed its answer on October 29, 1998, and, subsequently, filed an amended pleading containing a counterclaim for additional gambling taxes pursuant to §§ 4401 and 4411. Trial is scheduled to commence in St. Paul, Minnesota, on February 22, 2000.

On November 16, 1999, plaintiffs filed this instant motion for partial summary judgment, seeking a ruling from this court that the IRS must tax the Tworeks at the lower rates of the aforementioned code sections. Specifically, plaintiffs argue that because the Wisconsin statute outlawing their gambling operation is unconstitutional, their wagering is thus legal and should be taxed at the lower state authorized rate.

The task before this court on the instant motion is simple—and that is to determine the constitutionality of the Wisconsin gambling statute as applied to the plaintiffs and, therefore, whether or not their gambling operation was state authorized as a matter of law.

## DISCUSSION

### A. REQUEST FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs seek partial summary judgment pursuant to RCFC 56(c), which provides for judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A "genuine issue" is one in which a reasonable jury, or in this case, a reasonable judge, could return a judgment for the nonmovant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden is on the moving party both to show that there is no genuine dispute or issue as to any material fact and that it

---

1. Wis. Stat. § 945.01 states in relevant part:
   "945.01. Definitions
   In this chapter:
   ... (5) Lottery. (a) A lottery is an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by skill. 'Lottery' does not include bingo or a raffle conducted under ch. 563, pari-mutuel wagering conducted under ch. 562 or the state lottery or any multi-jurisdictional lottery conducted under ch. 565."

2. Wis. Stat. § 945.02 states in relevant part:
   "945.02. Gambling
   Whoever does any of the following is guilty of a Class B misdemeanor:
   ... (3) Conducts a lottery, or with intent to conduct a lottery, possesses facilities to do so."
   Wis. Const. Art 4, § 24 states in relevant part:
   "§ 24. Gambling
   Section 24... (6)(a) The legislature may authorize the creation of a lottery to be operated by the state as provided by law."

would be entitled to a directed verdict at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In reaching a decision on summary judgment, the court is not to weigh the evidence, nor make credibility assessments, nor seek the truth of the matter. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Any doubt as to factual issues must be resolved in favor of the party opposing summary judgment to whom the benefit of all presumptions and inferences run. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Finally, summary disposition is appropriate only if there is no genuine dispute over a fact that is *material. Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A material fact is one that might affect the outcome of the suit under the governing substantive law. *Id.*

As stated above, in a summary judgment motion the moving party bears the burden of demonstrating that there is no genuine issue of material fact and that their version of the law is the correct one. *Id.; Adickes*, 398 U.S. at 157, 90 S.Ct. 1598; RCFC 56(c). This burden may be discharged if the moving party demonstrates that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If its legal interpretations, however, are incorrect, the moving party may not be entitled to a judgment as a matter of law. RCFC 56(c). The role of the judge is not to weigh the evidence but to determine, under the applicable law, whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

Plaintiffs' motion requests a judgment against the government that: "1) the proper tax rate for wagers placed with the Tworeks, pursuant to 26 U.S.C. § 4401 is 0.25%; and 2) the proper yearly tax on persons who accept wagers is $50.00, pursuant to U.S.C. § 4411 . . . ." Plaintiffs' November 16, 1999 Motion For Partial Summary Judgment.

Plaintiffs also seek allowable fees and expenses. *Id.*

Internal Revenue Code ("IRC") sections 4401 and 4411 establish a two-tier federal tax structure for levies on gambling income procured by those who sponsor wagering activities. As previously stated, the respective tax is a flat fee of $500 a year plus 2.00% of wage receipts for *unauthorized* gambling activities and $50 a year plus .25% of wage receipts for state authorized activities. 25 U.S.C. §§ 4401, 4411. Wisconsin law prohibits the Tworeks from operating private lotteries at their establishments. Wis. Stat. § 945.02 (1997). Therefore, the Tworeks' gambling activities were *unauthorized* and their operations were taxed by the IRS at the higher rates.

There are, however, certain legal gambling activities in Wisconsin, for instance "bingo and raffle games conducted by religious, charitable, service, fraternal, or veterans' organizations . . ." Wis. Const., Art 4, § 24. Additionally, the state allows "pari-mutuel on-track betting" and a lottery operated by the state itself. *Id.* Outside of Wisconsin's authority, but well within her geographical boundaries, are federal Native–American reservations which conduct their own lotteries pursuant to the Indian Gaming Regulatory Act ("IGRA"), promulgated by the U.S. Congress in 1987. 25 U.S.C. § 2701.

■ Plaintiffs' position is that the Wisconsin statute prohibiting the Tworeks from operating a lottery is unconstitutional and is based on the fourteenth amendment's equal protection clause. Const. amend. XIV.[3] Pursuant to that amendment, if a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, this court will uphold it as long as it is rationally related to a legitimate state interest or end. *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); *citing Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). If the legislation, however, infringes on a fundamental

---

3. § 1 of the fourteenth amendment to the United States Constitution reads, in relevant part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

right or targets a suspect or particular class of individuals, it will be reviewed under strict scrutiny by the courts. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Strict scrutiny is the most critical analysis of legislation a court can undertake and, to meet its standards, the subject law must involve a compelling state interest coupled with a suitably tailored remedy. *Id.*

Plaintiffs' supporting argument is twofold. First, they propose that it is a violation of the fourteenth amendment's equal protection clause that Wisconsin allows itself to conduct a lottery but not private individuals. Second, they argue that because the IGRA allows for Native Americans to conduct lotteries on federal reservation land, within the State of Wisconsin, it is an equal protection violation for the state to proscribe it as to the Tworeks, who are outside of a reservation. *Id.* We address each argument seriatim and then, ultimately, analyze the Wisconsin statute under the appropriate basis of review.

### B. STATE–RUN LOTTERIES

Wisconsin law allows the state to conduct its own lottery but prohibits private individuals from doing so. Wis. Const. Art 4, § 24 6(a) and Wis. Stat. § 945.02(3). Plaintiffs claim that because the state runs its own lottery and allows certain groups only to partake in other forms of gambling, but proscribes gambling promotion as to private individuals, the state is violating the equal protection clause of the fourteenth amendment.

■ Plaintiffs' position can be disposed of quite simply. It is well established that a state can authorize itself to conduct a lottery and not give that same right to *private* individuals. *United States v. Williams*, 124 F.3d 411, 421–23 (3rd Cir.1997). This scenario is, in fact, the law in many other states. *See, e.g.,* N.Y.S. Const. Art 1, § 9 (New York) *and* Fla. Stat. 849.09(1)(a)-(d) (Florida). Plaintiffs have not shown, and there is not a single case this court can find which stands for the proposition, that a state cannot legally engage in its own lottery while prohibiting the same activity as to private individuals. The Wisconsin statute does not create an illegal suspect classification simply because the state allows itself to conduct a lottery and not private individuals.

■ Furthermore, Wisconsin may also allow other, non-lottery forms of gambling to be engaged in by particular organizations, *e.g.,* Bingo, and not others because the legislature believes that the public will be better served if only particular, non-profit groups are allowed to promote gambling. *Williams,* 124 F.3d at 423. Other states have taken this very same approach which have not been disallowed by the courts. *Id.* Plaintiffs' argument regarding such other forms of gambling is quite tenuous and they tacitly admit so because they mention it only in passing and do not reiterate the position in their conclusion.

Accordingly, plaintiffs' argument that "[t]he State of Wisconsin has engaged in a patchwork approach ... [and] creates arbitrary and baseless distinctions between permitted participants" is completely untenable considering the text of the statute and established law on this issue. Plaintiffs' November 16, 1999 Motion For Partial Summary Judgment at 7. Considering Wisconsin's moniker as the "cheese state," plaintiffs' hyperbole that the state's gambling statute "look[s] like Swiss cheese," while a witty metaphor, does nothing to substantively persuade this court otherwise. *Id.*

### C. NATIVE–AMERICAN LOTTERIES

On the first page of their brief, plaintiffs aver that—"[t]he State of Wisconsin created an unconstitutional racial classification when **it developed a policy** allowing Native Americans to engage in commercial gaming, but precluding others of different backgrounds from doing so." *Id.* at 1 (emphasis added). Apparently, plaintiffs' major threshold contention is that because they and other private individuals cannot legally run a lottery, Native Americans on federally-recognized reservations should likewise be prevented from doing so, lest there be an equal protection violation by the state. The plaintiffs buttress this weak position with general references to equal protection case law and an irrelevant case that rules "... Wisconsin has a policy toward commercial gaming that is regulato-

ry, as opposed to prohibitory." *Id.* at 7; *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin,* 770 F.Supp. 480, 482 (W.D.Wis.1991).

A review of the Wisconsin gambling statute and the relevant part of its constitution show that the term "Native American" is never mentioned anywhere in the context of gambling. *See* Wis. Stat. §§ 945.01–02; Wis. Const. art. 4 § 24, *supra.* In fact, nowhere in these aforementioned sections does it indicate that Wisconsin desired to develop a "policy" allowing Native Americans as a racial group to gamble and other ethnic groups to be prohibited from doing so. Plaintiffs' position that Wisconsin developed a suspect racial classification is specious, at best.

It is true, indeed, that within the borders of Wisconsin state Native Americans are legally allowed to sponsor their own lottery, but this power is conferred to them by federal, and not state, law, namely the Indian Gaming Regulatory Act ("IGRA" or "the Act"). 25 U.S.C. § 2710. They may only engage in such activity on federally-recognized reservations, which lands are, in many ways, separate jurisdictions from the state in which they are located. *Id.* at § 2703(4), (5); U.S. Const. art. I, § 8 (Indian Commerce Clause).

In that connection, the IGRA provides that Native Americans can sponsor their own lottery if the state itself "permits such gaming for any purpose by any person, organization or entity ..." 25 U.S.C. § 2710(a), (c). In Wisconsin, the state *itself* legally sponsors a lottery and, therefore, pursuant to the IGRA, the Native Americans can do the same on *their* reservations. *Id.;* Wis. Const. art. 4, § 24(6)(a). Congress' reason for creation of the Act was expressed in section 2702, which states: "[t]he purpose of this chapter is—(1) to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal government ..." There is a valid purpose both in theory and practice with Congress' intent in enacting the IGRA, as many such laws have been passed throughout our legislative history with a similar purpose. *See, e.g.* 25 U.S.C.

§ 450 (1999) (Indian Self Determination and Education Assistance Act).

As laudable as these goals are, however, a statute must still meet constitutional muster for this court to give deference to it. The IGRA has passed such constitutional analysis by the High Court in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). While *Seminole* was not an equal protection case, it was a decision on an eleventh amendment issue within the context of the IGRA, and, inferentially, upheld the legality of the Act. Later Supreme Court cases have effected the same result. *See, e.g. Greater New Orleans Broadcasting Association, Inc. v. United States,* 527 U.S. 173, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999).

Considering the above, what plaintiffs are asking this court to do is to find, alternatively, that: 1) the IGRA is unconstitutional in states that do not prophylactically prohibit *all* gambling; or 2) upon the enactment of the IGRA, all states' laws that permitted gambling by any classification, regardless of reason, immediately became unconstitutional overnight. Plaintiffs launch this attack by wrapping their argument in the red, white, and blue of the fourteenth amendment. This position flies directly in the face of Congress' intent in enacting the IGRA, and this court cannot subvert congressional intent when such has a firm constitutional foundation.

Stated differently, plaintiffs are demanding either a judicial repeal of the IGRA or a decree from this court that individual states must make a choice between allowing every single person/entity to promote gambling or disallowing gambling completely for everyone. Plaintiffs state on page 10 of their brief: "Wisconsin's policy is to allow Native American commercial gaming... [i]f Wisconsin desired to eliminate Native American gambling from Wisconsin, it would only need to take the simple expedient of ending its own gambling enterprises. Disallow commercial gambling by all practitioners, and the Indians would not be able to gamble either." With all due respect to plaintiffs, this position is farcical. The Native–American policy plaintiffs speak about is not Wisconsin's, but Congress'. What the Tworeks want this

court to do is tell Wisconsin that it must give blanket permission for all to gamble within her state lines or no one at all, lest she be in violation of the United States Constitution. They want this court to ignore centuries of established Indian sovereignty granted to Native Americans by the federal government. We cannot do that. Plaintiffs have been wholly unsuccessful in convincing this court to rule against a clear and valid congressional intent and recent Supreme Court decisions.

Ironically, plaintiffs cite a case in support of their argument, but which inferentially finds that both the IGRA and the Wisconsin statute are constitutional. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 770 F.Supp. 480 (W.D.Wis.1991). Plaintiffs' argument that the *Chippewa* court's ruling stating Wisconsin's gambling law is regulatory and not prohibitory is inapposite to the equal protection issue. Whether the State of Wisconsin prohibits gambling or regulates it is irrelevant to constitutional review because Congress, not Wisconsin, created the racial classification.

■ The equal protection clause does not create by itself substantive rights. *Vacco*, 521 U.S. at 799, 117 S.Ct. 2293. This principle is well settled and has been reiterated many times by the Supreme Court. *Id.* Alone, the fourteenth amendment does not bestow on the Tworeks the right to run a lottery from their establishments. The clause "embodies a general rule that states must treat like cases alike but may treat unlike cases accordingly." *Id.* It is not a constitutional requirement that state regulations and laws be indiscriminate as they are applied to different situations. *Id.* For example, a state may allow bingo games to be operated by a religious institution or the Veteran's of Foreign Wars ("VFW"), but not allow one to be run by local drinking establishments or private individuals from their homes. If this court follows plaintiffs' logic to its conclusion, residents of Wisconsin could find that their neighbor is operating a casino in the house or apartment next door!

Moreover, state regulations have been upheld that affect certain groups unevenly, even though the law itself treats them no differently from all members of the class described by the law. *Massachusetts v. Feeney*, 442 U.S. 256, 271–73, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (law giving job benefits to war veterans as a class upheld despite the fact that most veterans were male.) This principle erodes plaintiffs' argument further because it illustrates that states are given broad power to regulate, even though some individuals may, in practice, be disproportionately disadvantaged.

Courts will review a state's legislative classification or distinction under the fourteenth amendment depending on whether the law targets a suspect class or burdens a fundamental right. *Vacco*, 521 U.S. at 799, 117 S.Ct. 2293. As previously held in this section, Wisconsin's gambling statute does not create a Native–American racial classification. Therefore, the only analysis remaining, at this point, is whether the Tworeks' gambling operation constitutes a fundamental right and which standard of review must be applied as a result. The following section will address that issue and then will analyze the Wisconsin statute under the appropriate basis of review.

### D. BASIS OF REVIEW

The prior two sections of this opinion concluded that the Wisconsin statute prohibiting plaintiffs' gambling operation did not involve a suspect classification. We will now address the question of whether operating a lottery is a fundamental right. If the court determines that the Wisconsin statute does not infringe on a fundamental right, it will then review it on a rational basis. *Id.* Strict scrutiny analysis would only be utilized if the statute involved a fundamental right or, as previously discussed, a suspect classification. *Clark*, 486 U.S. at 461, 108 S.Ct. 1910.

■ Generally, economic legislation does not involve fundamental rights, *e.g.*, right to vote, right of free speech, and right of interstate travel. *Williams*, 124 F.3d at 422 (3rd Cir.1997). Particularly, the right to partake in a specific employment or economic endeavor is not fundamental. *Id.* In fact, the recent *Williams* decision held that the right to operate a gambling enterprise was specifically not

a fundamental individual interest guaranteed by the Constitution and, therefore, strict scrutiny was unnecessary to review a state law prohibiting such. *Id.*

Consequently, the Tworeks do not have a fundamental constitutional right to operate a gambling enterprise. Accordingly, the Wisconsin statute prohibiting their gambling operations will be reviewed under a rational basis analysis. *Vacco*, 521 U.S. at 799, 117 S.Ct. 2293. To apply this standard, it is the task of the court to determine if Wisconsin's gambling law bears a rational basis to a legitimate state end or purpose, and, if so, we will uphold it. *Id.*

After a careful review, this court holds that, indeed, Wisconsin's gambling statute satisfies the rationality requirement. Wisconsin has an interest in regulating and controlling gambling, for obvious reasons which do not necessitate full enumeration herein. The law is logically tailored to meet those ends. For example, Wisconsin allows religious, charitable, service, and veterans' organizations to conduct bingo games as long as all profits inure to the tax-exempt organization sponsoring such. Wis. Const. Art. 4, § 24. This is a far cry from the Tworeks' offering of gambling to their bar patrons, while accruing profits for themselves only. The state, if it desires, can rationally distinguish alcohol-consuming bar patrons in a pub from a gathering of VFW members and their families in a town hall.

In the *Williams* case cited previously, the court concluded that: "[i]n prohibiting certain gambling activities but not others, Pennsylvania lawmakers could have rationally concluded that the prohibited activities are particularly undesirable—because they have an increased tendency to encourage self-destructive behavior, because they are especially susceptible to the dishonest practices and organized crime connections that have historically plagued the gambling business, or for other reasons." 124 F.3d at 423. This court agrees. By further example, the Supreme Court previously held this principle in another economic equal protection case, stating that: "[e]vils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

The Supreme Court's holdings in the *Williams* and *Williamson* cases show that the rational basis standard is not a difficult one to meet. Courts will give much deference to a state's legislature in structuring laws and regulations not impinging on fundamental rights or involving suspect racial classifications. *Vacco*, 521 U.S. at 799, 117 S.Ct. 2293. It is not for the courts to microscopically analyze all state regulations for clear and unequivocal logic. The Wisconsin statute makes obvious distinctions as to who can sponsor a gambling operation and what type of activity is permitted. In this court's opinion, these distinctions are not "arbitrary and baseless" as plaintiffs state at page 7 of their brief. Consequently, the court holds that Wisconsin's gambling statute is rationally related to a legitimate state interest, and we uphold it.

### CONCLUSION

Plaintiffs' claim of reverse discrimination fails to persuade this court to find either that the IGRA or the Wisconsin gambling laws, as applied to the plaintiffs, violate the equal protection clause of the fourteenth amendment. Their constitutional argument is rejected, along with their interpretation of the aforementioned statutes. Under these facts, plaintiffs are not entitled to a judgment as a matter of law. As such, genuine issues of material fact exist as to whether the Tworeks engaged in unauthorized wagering and also whether they should, therefore, be taxed at the higher rate under the IRC. Consequently, plaintiffs' motion for partial summary judgment is hereby DENIED.

In light of this decision and considering the current proximity to the trial date, the parties are hereby directed to forthwith discuss the possibility of definitively settling this matter short of a trial on the merits and shall inform the court of the status of such negotiations at the pretrial conference scheduled for February 15, 2000.

IT IS SO ORDERED.