The Honorable Mark W. Perry State Representative Post Office Box 97 Jacksonville, Arkansas 72078-0097
Dear Representative Perry:
You have requested my opinion on two questions pertaining to the Arkansas laws governing mobile or portable dentistry. You ask:
 1. Can Medicaid legally deny claims submitted by a mobile or portable provider?
 2. Can the State Dental Board pass regulations on mobile or portable dentistry providers that are more stringent than traditional providers?
RESPONSE
Medicaid can legally reject requests for reimbursement for several reasons. Whether any particular rejection is legitimate involves factual questions that I cannot resolve in an opinion. As for your second question, in my opinion, the State Dental Board can pass more stringent regulations on mobile or portable dentistry providers if the Board has a rational basis for more stringent regulations.[1] *Page 2 
DISCUSSION
Question 1: Can Medicaid legally deny claims submitted by amobile or portable provider?
Medicaid can legally reject requests for reimbursement on several grounds. Whether any particular rejection is legitimate involves factual questions that I cannot resolve in an opinion. If a medical provider is unsatisfied with Medicaid's refusal to reimburse, then that provider can avail himself or herself of the administrative remedies available. Section 302.520 of the Dental Provider Manual states procedures for providers to follow if they believe their claim was improperly denied.[2]
Question 2: Can the State Dental Board pass regulations onmobile or portable dentistry providers that are more stringent thantraditional providers?
Yes, if the Board has a rational basis for doing so. Your question is essentially about equal protection. You are asking whether it is legal to treat one class of people (i.e., "mobile . . . dentistry providers") differently than another class (i.e., "traditional [dentistry] providers"). TheFourteenth Amendment to the United States Constitution places certain restrictions on state laws that group people into classes: "No state shall . . . deny any person within its jurisdiction the equal protection of the laws."
One constitutional law scholar explains that the question whether a law "deny[s] any person" equal protection can be reduced to three sub-questions: "What is the classification? What level of scrutiny should be applied? Does the government's classification meet the level of scrutiny?"[3] I will analyze the relevant statutes and Board regulations using these three questions.
The classification at issue groups dental providers into mobile providers and traditional providers. It places somewhat different, and sometimes more stringent, requirements on the former. *Page 3 
The nature of that classification directs us in our second sub-question: What level of scrutiny should be applied? Different classifications call for different levels of scrutiny. Classifications based on race or national origin are subject to the strictest scrutiny.[4] Classifications based on gender or on whether a child was born to unmarried parents are subject to intermediate scrutiny.[5] Finally, all other laws that classify people must meet the minimum level of scrutiny: the rational basis test.[6] A law survives the latter if (1) the goal the law seeks is related to any conceivable legitimate government purpose and (2) if the means chosen to attain that goal are a rational way to achieve it.[7] Because the classification at issue here is not about a suspect class (which would trigger strict or intermediate scrutiny), the classification must meet the rational basis standard.
The final sub-question is whether the classification at issue meets the rational basis test. In my opinion, it does. The Board's regulations, which are mostly identical to the relevant statutes, appear to seek several goals, any one of which is a legitimate government purpose. The greater administrative burdens placed on mobile providers seem due, in part, to the goals of (1) reducing fraud and (2) ensuring that citizens are not abandoned by the mobile providers who have treated them. Given that both these purposes are related to the state's interest in the public's health and welfare, each of these purposes satisfies the requirement that law seek goals related to a conceivable legitimate government purpose. The additional regulations on mobile providers seem to stem from the unique nature of mobile dentistry and, therefore, are "related" to the two goals just mentioned. There may be other goals furthered by the law, but those mentioned here suffice to show the statutes and regulations pass the rational basis test, in my opinion. Therefore, the Board may pass regulations pertaining to mobile providers that are more stringent than those pertaining to traditional providers. *Page 4 
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:RO/cyh
[1] Your questions reference "mobile or portable" dentistry. As I understand those terms, the former refers to what is, essentially, a self-contained dental-office-on-wheels. The dental procedures are performed in the vehicle. The latter refers to the situation in which a dentist loads equipment, transports it to a standing building, unloads it, and performs dental procedures in the building. This opinion is limited to "mobile" providers because there are currently no regulations or statutes governing only portable dentistry.
[2] You can find this provider manual online: https://www.medicaid.state.ar.us/InternetSolution/Provider/docs/dental.aspx (Last visited, May 12, 2010).
[3] Erwin Chemerinsky, Constitutional Law: Principles andPolicies, 2d ed. (Aspen 2002), p. 644.
[4] Palmore v. Sidoti, 466 U.S. 429, 433-34 (1984);Graham v. Richardson, 403 U.S. 365, 367 (1971);Chemerinsky, supra note 3, at 645.
[5] Clark v. Jeter, 486 U.S. 456 (1988); Reed v. Reed,404 U.S. 71 (1971) Chemerinsky, supra note 3, at 645.
[6] Chemerinsky, supra note 3, at 645.
[7] McGowan v. Maryland, 366 U.S. 420, 426 (1961);Chemerinsky, supra note 3, at 646, 657-59.