Filed 1/23/23  Spjut v. County of Kern CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD W. SPJUT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF KERN et al., <br><br> Defendants and Respondents. | F082265 <br><br> (Super. Ct. No. BCV-18-101505) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Richard W. Spjut, in pro. per., for Plaintiff and Appellant.

The Appellate Law Firm and Berangere Allen-Blaine, for Plaintiff and Appellant.

Margo A. Raison, County Counsel, and Jerri S. Bradley, Deputy County Counsel for Defendants and Respondents.

-ooOoo-

Richard W. Spjut filed an action in the superior court seeking a refund of property taxes he had paid on his house in Bakersfield. He made equal protection and due process claims, among other claims. The trial court found in favor of defendants Kern County, the Kern County Board of Supervisors and its Assessment Appeals Board, and dismissed the case. Spjut appealed. We affirm.

## FACTUAL AND PROCEDURAL OVERVIEW

### A. *Spjut Gets the Family House in Divorce from His Wife*

Richard Spjut and his ex-wife purchased a house in Bakersfield on May 23, 2003, with title in the name of Spjut's ex-wife (they were not married at the time). Spjut and his ex-wife got married in 2004, and, in 2006, Spjut's name was added to the title. Spjut's ex-wife filed for divorce in January 2010. Judgment of dissolution was entered on May 5, 2011, with the family court ordering bifurcation and retaining jurisdiction to determine the property settlement while the parties negotiated the same. The family court granted temporary use and control of the residence to Spjut, pending an appraisal of the property.

On June 30, 2011, the family court ordered Spjut to "provide proof of qualification for refinance in total of the amount of the first and second mortgage/loan on the family residence." (Unnecessary capitalization omitted.) The court further ordered that Spjut's ex-wife "may bring [a] motion for occupancy of the house if [Spjut] does not provide proof of refinancing ability." (Unnecessary capitalization omitted.) On September 29, 2011, judgment was entered on the reserved issues, with Spjut awarded sole title to the residence, contingent on him refinancing the first mortgage on the property solely "in his name." (Unnecessary capitalization omitted.) His ex-wife was ordered "to cooperate with [the] refinance" and was held "solely responsible for [the] 2nd mortgage." (Unnecessary capitalization omitted.) The parties agreed the court would retain jurisdiction to enforce the property settlement pursuant to Code of Civil Procedure section 664.6, which permits the court to enter judgment pursuant to a settlement between

2.

the parties and, if requested by the parties, to "retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

On account of issues between the parties, the final judgment was not entered until September 4, 2013. Spjut acknowledged, in a statement included in the record, that refinancing of the first mortgage to one in his name was "delayed" until September 2013. An interspousal transfer deed was eventually signed by Spjut's ex-wife on August 1, 2013, and recorded on September 12, 2013, with Spjut thereupon holding sole title to the property. On the September 12, 2013 interspousal transfer deed, Spjut's ex-wife declared: "This is an Interspousal Transfer and not a change in ownership under Section 63 of the Revenue and Taxation Code and Grantor(s) has (have) checked the applicable exclusion from reappraisal."

### B. Spjut Challenges the Valuation, for Property Tax Purposes, of the House, at a Hearing Before the Assessment Appeals Board for the County of Kern

As noted above, the house was originally purchased in 2003; its purchase price was $258,000, which represented its base value for property tax purposes under Proposition 13. In 2011, when the family court had ordered an appraisal of the house, the housing market was depressed and the house was valued, pursuant to the appraisal, at $182,000. Following the recordation, in 2013, of the interspousal transfer deed by which Spjut's wife transferred her interest in the property to Spjut, the Kern County Assessor's Office assessed the value of the house for purposes of property taxes for the 2014-2015 tax year (this value represented the 2014 lien date assessment). The value of the house for this purpose (that is, the 2014 lien date assessment) was assessed at $272,000, in compliance with the requirements of Proposition 13 and Proposition 8.

On November 29, 2014, Spjut filed an "application for changed assessment" with the County of Kern. (Unnecessary capitalization omitted.) The matter was heard by the Assessment Appeals Board of the County of Kern (AAB or the Board) on May 11, 2016.

3.

Jeff Graham, chief appraiser with the Kern County Assessor's Office (Assessor's Office) represented that office; Spjut appeared on behalf of himself.

Joshua Armstrong, a residential property appraiser employed by the Assessor's Office testified on behalf of the Assessor. Armstrong also submitted a written appraisal report that he had prepared assessing the value of Spjut's residence at $272,000 as of January 1, 2014. The written appraisal report provided as follows:

> "The property's base year value was established as of its May 23, 2003 acquisition for $258,000. This value was subjected to the California Consumer Price Index (CPI) factor each year per Proposition XIIIA.

> "The applicant has asserted that the Assessor was in error for enrolling the indicated 2014 fair market value (which was below the property's factored base year value of $304, 823), as he believes the property should have been reassessed at an earlier 2011 event. The event in question, a 50% transfer of interest between the applicant and his ex-wife, is considered to be an interspousal transfer per Section 63 of the Revenue and Taxation Code and is therefore categorically excluded from reassessment. Multiple attempts were made to remedy the applicant's stated misconception of the pertinent property tax laws. The contested Proposition 8 value that was indicated by market data and enrolled as of January 1, 2014 was $272,000. [¶]…[¶]

> "Article XIIIA of the State Constitution (Proposition 13) requires that property be re-appraised at its market value as of the date of change in ownership. Article XIIIA also allows for the base year value to be increased by no more than 2 percent each year.

> "Revenue and Taxation Code Section 51 allows for the enrollment of the lesser of the factored year value or the full cash value as of the lien date. The property's full cash value, as of the lien date, takes into consideration the reductions in value due to damage, destruction, depreciation, obsolescence, removal of property, or other factors causing a decline in value.

> "Revenue and Taxation Code section 110 defines 'full cash value' or 'fair market value' as the amount of cash or its equivalent that property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and both the buyer and seller have knowledge of all of the uses and

4.

purposes to which the property is adapted and for which it is cable of being used, and of the enforceable restrictions upon those uses and purposes.

"In response to Mr. Spjut's assertion that his 2011 interspousal transfer should have been reassessed: Revenue and Taxation Code 63 states, 'a change in ownership shall not include any interspousal transfer, including, but not limited to:  (c) Transfers to a spouse or former spouse in connection with a property settlement agreement or decree of dissolution of a marriage or legal separation, or (d) The creation, transfer, or termination, solely between spouses, of any co-owner's interest.  [¶ ] … [¶ ]

"Based on the available comparable sales data in the subject's neighborhood, the Assessor believes the subject property was not over-assessed as of lien date, and, per state law, the lesser of the two possible values (i.e. the subject's *factored base year value* or *fair market value*) was correctly enrolled.  No further reduction in value is warranted at this time."

In addition to the foregoing explanation in his appraisal report, Armstrong testified that Spjut wanted the family court's contingent award of the family residence to him in 2011 to count as a change of ownership, with a corresponding reassessment of the property for property tax purposes.  Armstrong noted this outcome was precluded by applicable state law, which expressly provided that a transfer between spouses did not constitute a change of ownership.  Specifically, Armstrong testified:

"The subject property is located in Northwest Bakersfield.  It's improved with a single family residence that was constructed in 1995.  It has 2,009 square feet of living space.  The construction quality is typical for the area that it is located in.  And, the current base year value was established on May 23, of 2003.  And as Mr. Graham said what is being contested today is the 2014 lien date evaluation which it was receiving, and is receiving, a discounted rate, a reduction under Proposition 8.  I've included in my report here the four best comparable sales from the area that describe a range of value from $277,000 to $299,000.  The Assessor's original opinion of value for 2014 was $272,000, which is within 5% of what the Board of Equalization considers a significant variant.  So, the Assessor is recommending no change.  I wanted to just briefly address the applicant, what he at length contends in his application and also in our phone conversations, uh, is regarding a subsequent transfer [as to which the] applicable tax code – State Tax Code is very explicit.  It's not considered a change of ownership.  So I wanted to briefly address that.  It has to do with an interspousal transfer.  So the applicable tax code,

5.

Revenue and Taxation Code Section 63 states: 'A change of ownership shall not include any interspousal transfer, including, but not limited to, transfers to a spouse or former spouse in connection with a property settlement agreement or decree of dissolution of marriage or legal separation.' Also the creation[,] transfer[,] or termination solely between spouses of any co-owner[']s interests is deemed to not be a change of ownership. Again, I just mention that because that seems to be what the applicant is continuing with."

After Armstrong concluded his testimony before the Assessment Appeals Board, Spjut testified on his own behalf. Spjut submitted a 2011 appraisal, prepared as part of his divorce proceedings, as evidence of the value of the house; he also submitted various documents from his divorce proceedings. Spjut argued the 2011 valuation of the house should constitute its base value for property tax purposes, so he could take advantage of the fact the property market had dropped, rendering the 2011 valuation lower than the 2003 purchase price of the house.

One of the members of the Board addressed Spjut: "So let me see if I can understand. Your argument is essentially that the transfer between you and your ex-wife was a change of ownership as defined under the Revenue and Taxation Code. The assessor's indicated that that type of change of ownership is specifically exempt from reassessment rules. Uh, so given that what the assessor's pointed out, that there's a specific exemption in place under state law, I assume to prevent spouses from being able to reset their Prop 13 value by divorce or by other types of ownership [transfers]. So there's this – appears there's this specific law in place that directly addresses your situation. What is it about that specifically that you don't feel applies?" Spjut gave a rambling response that did not address the question; Spjut basically said that Proposition 13 protected homeowners in times when property values were rising, "but that purpose does not work in this kind of climate we're in now."

The Board member then added: "So you bought the property. The Prop 13 value was set. And there was no transfer until there was a transfer between spouses or pursuant to dissolution of marriage. At that time, a transfer was made. At that time, state law

6.

indicates that there's no reassessment based on that type of transfer. I'm still struggling to find [your point, given] how state law seems to squarely apply here. It seems like you're trying to find, uh, ways around application of what's a pretty clear cut issue." Spjut responded: "Well to me it's like a constitutional issue. It's like there should be – the idea that 63(c), I believe it is, is to provide a benefit for the spouse against the rising market. Why not have that same benefit apply to me through those other statutes. Why should I be barred from that? That's just – I'm being denied a benefit – (unintelligible) under the 14th Amendment of the Constitution."

A Board member subsequently raised the following point: "Although the divorce may have been started in 2011 – uh, excuse me, 2011, the first document we have is an interspous[al] transfer deed between you and your wife in September 2013." Spjut responded: "That's correct." The Board member observed that, given the date of the deed, "the absolute first date [Spjut] could have done anything" was September 2013 not 2011, but, regardless of the transfer date, the transaction was "exempted from reappraisal" because it was "part of a dissolution of marriage." Another Board member added: "We don't get to apply [the law] differently when the market is rising or falling. It's just an absolute." Spjut responded: "I'm just simply saying that the option of me being able to – the fact that I went through that – the appraisal. I went through the change in ownership and now you turn around and you're kicking me away. Why can't I just use the change of ownership and have it set to the year I bought the house? 2011."

C.    *The Assessment Appeals Board Denies Spjut's Challenge*

In written findings, the Board found in favor of the Assessor. The Board summarizes Spjut's claims:

> "[Spjut] provided this Board with a written brief and attached documents and confirmed that his primary dispute is that the Assessor did not recognize the 2011 transfer as a change in ownership. He acknowledged that the 2011 transfer was part of his divorce. He also testified that he is a senior citizen who would qualify under California Revenue & Taxation

7.

Code section 69.5 for a transfer of the base year value, except that the 2011 transaction is not recognized as a change in ownership. [Spjut] asked that the Board recognize that the intent behind California Revenue & Taxation Code section 63 was to provide tax relief when property is transferred between spouses. He asked that the 2011 transfer be considered a change in ownership, subject to reassessment."

The Board also noted that Spjut "considers failure to recognize [this] 2011 transfer as a change in ownership to be a violation of his constitutional rights … as he is being denied a benefit (the ability to take advantage of the transfer of base value) offered to others."

The Board found: "The only competent evidence of value presented was the comparable sales analysis provided by Mr. Armstrong on behalf of the Assessor. The Applicant's submission of a 2011 appraisal is not persuasive when discussing a 2014 valuation. Nothing presented by the Applicant contradicted the Assessor's analysis. As a result, this Board finds that the fair market value of the subject property is $272,000."

The Board further found:

"This Board is legally unable to recognize a change in ownership due to the 2011 transfer of property from [Spjut's] ex-wife to [Spjut]. This Board finds that California Revenue & Taxation Code section 63 states unequivocally:

"Notwithstanding any other provision in this chapter, a change of ownership shall not include any interspousal transfer, including, but not limited to:

"(a) Transfers to a trustee for the beneficial use of spouse, or the surviving spouse of a deceased transferor, or by a trustee of such a trust to the spouse of a trustor[;]

"(b) Transfers which take effect upon the death of a spouse.

"(c) Transfers to a spouse or former spouse in connection with a property settlement agreement or decree of dissolution of a marriage or legal separation, or

"(d) The creation, transfer, or termination, solely between spouses, of any coowner's interest.

8.

"(e) The distribution of a legal entity's property to a spouse or former spouse in exchange for the interest of such spouse in the legal entity in connection with a property settlement agreement or a decree of dissolution of a marriage or legal separation.

"Subdivision (c) specifically addresses the situation before us. The 2011 transfer was part of the property settlement in the [Spjuts'] divorce.… Therefore the 2011 transfer is not considered a change in ownership. This Board is not the forum for a discussion of constitutional rights except to note that the state confers a conditional benefit on certain persons and conditional benefits are not unconstitutional per se."

The Board concluded that "the currently enrolled value is correct and is supported by the evidence."

## D.    *Spjut's Action for Refund of Property Taxes in the Kern County Superior Court*

Spjut then filed the instant action in the Kern County Superior Court seeking a refund of property taxes. Among other claims, Spjut challenged the constitutionality of Revenue and Taxation Code section 63, subdivision (c), on equal protection grounds, under the federal Constitution. The trial court rejected Spjut's constitutional claim and dismissed the case. The court issued a statement of decision explaining its reasoning:

"This matter proceeded to trial on June 11, 2020 before this court. The case had been bifurcated, and the legal issues were tried to the court on essentially stipulated facts. The case was tried in less than an hour. Neither side requested a Statement of Decision, but this court gives this Statement to provide context for its judgment.

"The court hereby renders judgment for the Defendant and against the Plaintiff[.] The Plaintiff is to take nothing by way of his complaint. Defendant is entitled to their costs of suit incurred according to law.

"The facts are not in dispute.

"Plaintiff sues the County of Kern based on the Board of Supervisors and its Assessment Appeals Board's failure to refund property taxes.… [¶] This case originates from Plaintiff's November 29, 2014 Application for Changed Assessment pursuant to Revenue & Tax Code § 1603 before the Board of Supervisors, in which Plaintiff sought a change in his tax base year from 2003 to 2011. The Application was prompted by an increase in

9.

Plaintiff's property taxes when the County reassessed Plaintiff's property taxes … in 2013.

"Plaintiff and his wife divorced in 2011. Pursuant to the marital dissolution settlement (May 24, 2011), the marital home went to Plaintiff (September 29, 2011). Plaintiff was required thereafter to refinance their first loan in order to buy his ex-wife out of their second loan on the property. Once Plaintiff refinanced the loan, title changed on September 29, 2013. When ownership transferred from Plaintiff and his wife to Plaintiff in 2011, the home appraised for $182,000. The County reassessed the value of the property [in 2013] at [$]272,000, generating a property tax bill of $4,012.74.

"Through his appeal Plaintiff sought a finding that a change of ownership occurred in 2011, and requested that the base year of his taxes be reassessed for that year at a value of $182,000. The County informed Plaintiff that Revenue & Tax Code § 63 provides that any transfer between spouses does not constitute a change in ownership [for this purpose].

"In his Amended Complaint, Plaintiff purports to allege 10 causes of action. Boiled down, Plaintiff alleges [the] County denied equal protection of the law through its interpretation of Revenue & Tax Code § 63(c). More specifically, he contended 'that R&TC §63(c) was a 'constitutional issue' … and that he 'was being denied a benefit'…and…that his 'constitutional rights are being violated[.]' " (Amended Complaint, ¶ 34.) He contends Section 63 amounts to a denial of equal protection, depriving Plaintiff of the benefits of a change of ownership in 2011, which would have afforded him options in terms of tax benefits and/or protections.

"Further, [Plaintiff alleges] the Board's failure to inform Plaintiff prior to the hearing that it did not have jurisdiction to determine that issue violated his due process rights under 42 U.S.C. § 1983. Rather than informing Plaintiff of this, [he alleges] the Board incorrectly proceeded with the appeal of the decision pertaining to his Application for Changed Assessment as one for a request for reassessment. Plaintiff alleges he did not dispute the actual assessment, but rather the Board's application of Revenue & Tax Code § 63(c) to his property.

"Plaintiff prays for a finding that (1) the Board's narrow interpretation of Tax & Revenue Code § 63(c) is unconstitutional pursuant to 42 U.S.C. § 1983, (2) his base year for property taxes is 2011, (3) he is entitled to a tax refund of $4,084 and payment of overpayments since filing suit, (4) damages, costs, and punitive damages, and (5) a finding that he has been denied due process.

"Fundamental to Plaintiff's entire case is the proposition that Revenue & Tax Code § 63(c) is unconstitutional. Plaintiff's theory is that the distinction that exempts marital property transfers from reassessment upon change of ownership is a violation of equal protection, depriving him of a benefit available to others in a declining real estate market.

"Plaintiff's theory of unconstitutionality is simply wrong. 'In the field of taxation, the states enjoy wide "latitude" ... in the classification of property ... and the granting of partial or total exemptions upon grounds of policy.' (*Nordlinger v. Lynch* (1990) 225 Cal.App.3d 1259, 1281 ....) 'So long as the system of taxation is supported by a rational basis, and is not palpably arbitrary, it will be upheld despite the absence of " 'a precise, scientific uniformity' " of taxation.' (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 234 …[;] *Munkdale v. Giannini* (1995) 35 Cal.App.4th 1104, 1114.)

"The exclusion from reassessment afforded to marital transfers under [Revenue and Taxation Code] section 63 fulfills a fundamental state interest in removing tax barriers to typical marital property transfers. Generally speaking, the exclusion *benefits* taxpayers, because it prevents taxation in rising real estate markets. There are times, in unusual declining markets, as occurred here, where the taxpayer hopes for a reassessment in order to lower the tax burden. This is not grounds to declare the section unconstitutional. The law meets the 'rational basis' test.

"Therefore, all of Plaintiff's other theories of liability fail. He was not denied due process by the Board's failure to hear his constitutional challenge. Because the constitutional challenge is not valid, he suffered no injury.

"There is no other issue to be determined by this court or by a jury on the basis of the bifurcation. The court's decision here is plenary. Actions for tax refunds cannot be tried before a jury. A suit for legal relief pursuant to 42 U.S.C. § 1983 is an action at law which might otherwise give rise to trial by jury, but, since the court has found no legal basis for the constitutional challenge, there is nothing further for any jury to decide.

"All other defenses offered by the Defendants are essentially moot." (Fn. omitted.)

The trial court entered judgment in favor of defendants. Spjut appealed following the entry of judgment in the trial court.

**DISCUSSION**

Spjut raises three issues on appeal, each of which we address seriatim below. Finding no merit to any of the three issues, we affirm the judgment of the trial court.

## I. Spjut's Constitutional Claims

### A. *Spjut's Marital Status Had No Bearing on His Eligibility for Property Tax Relief Under Revenue and Taxation Code Section 69.5, Subdivision (a)(1)*

Spjut argues: "Appellant's claim is that he was denied certain tax benefits based solely on his status as having been married. *Absent Appellant's marriage classification, he would have been eligible to obtain the homeowner's exemption under subdivision (k) of Proposition 13. (Revenue & Tax Code § 69.5(a)(1).)*" (Italics added.) We reject this contention.

Revenue and Taxation Code section 69.5, subdivision (a)(1), provides:

> "Notwithstanding any other provision of law … *any person over the age of 55* … who resides in property that is eligible for the homeowners' exemption … may transfer, subject to the conditions and limitations provided in this section, the base year value of that property *to any replacement dwelling of equal or lesser value that is located within the same county and is purchased or newly constructed by that person as his or her principal residence within two years of the sale by that person of the original property*, provided that the base year value of the original property shall not be transferred to the replacement dwelling until the original property is sold." (Italics added.)

Revenue and Taxation Code section 69.5, subdivision (d), clarifies that "[t]he property tax relief provided by this section shall be available to a claimant who is the coowner of the original property, as a joint tenant, a tenant in common, a community property owner, or a present beneficiary of a trust," subject to certain specified limitations. Among the limitations specified in Revenue and Taxation Code section 69.5, subdivision (d), is the following: "If two or more replacement dwellings are separately purchased or newly constructed by two or more coowners and more than one coowner would otherwise be an eligible claimant, only one coowner shall be eligible under this

12.

section. These coowners shall determine by mutual agreement which one of them shall be deemed eligible." (Rev. & Tax. Code, § 69.5, subd. (d)(2).)

Revenue and Taxation Code section 69.5, subdivision (a)(1) is not applicable to the instant scenario by its express terms, as it clearly requires the sale of the original property and acquisition of a replacement property. Spjut and his ex-wife had owned the house in question as joint tenants, and the relevant transaction concerned the transfer, to Spjut, of his ex-wife's 50 percent interest, but did not affect Spjut's own 50 percent interest in the property. Thus, Spjut retained ownership of the original property all along; he did not sell it and acquire a replacement dwelling. Based on *the nature of the transaction at issue*, Spjut was not eligible for property tax relief under Revenue and Taxation Code section 69.5, subdivision (a)(1).

Spjut's argument that, "[a]bsent [his] marriage classification, he would have been eligible to obtain the homeowner's exemption" under Revenue and Tax Code section 69.5, subdivision (a)(1), is specious. Revenue and Taxation Code section 69.5, subdivision (a)(1), provides property tax relief to any qualifying coowner of property, regardless of his or her marital status, when the coowner sells one property and buys another one within the limitations specified in the statute. Spjut's marital status had no bearing on his eligibility for property tax relief under Revenue and Taxation Code section 69.5, subdivision (a)(1).

### B. The Trial Court's Application of the Rational Basis Test Was Not Error

Spjut next argues:

> "The court below mistakenly applied the rational basis test to the constitutional questions raised by Appellant. [¶] … [¶] Appellant's equal protection claim challenge to Revenue & Tax Code § 63 stems from his disparate treatment based on his marital status. The U.S. Supreme Court has applied an intermediate level of scrutiny to laws that classify individuals based on whether or not they are married. (See *Clark v. Jeter* (1988) 486 U.S. 456, 461; see also *Sessions v. Morales-Santana* (2017) 137 S.Ct. 1678, 1700 n. 25 [noting that '[d]istinctions based on parents' marital

13.

status, we have said, are subject to the same heightened scrutiny as distinctions based on gender'].)"

Spjut further contends: "Accordingly, the court below should have applied [an] intermediate level of scrutiny to Appellant's constitutional challenge of Revenue & Tax Code § 63 instead of the rational basis test. Thus, the Judgment and Order After Hearing should be reversed and this action remanded so that the court below may reconsider Appellant's constitutional arguments while applying an intermediate level of scrutiny." We reject this argument as meritless.

In general, any "transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest," constitutes a change in ownership, subjecting the property to reassessment. (Rev. & Tax. Code, § 60.) There are, however, exceptions to this general rule. Revenue and Taxation Code section 63, subdivision (c), for example, specifically excludes transfers of real property made between spouses in connection with divorce proceedings, from the range of transactions that constitute a "change of ownership" in terms of requiring reassessment of the property for property tax purposes.

Revenue and Taxation Code section 63, subdivision (c) provides: "Notwithstanding any other provision in this chapter, a change of ownership shall not include any interspousal transfer, including, but not limited to: [¶] … [¶] (c) Transfers to a spouse or former spouse in connection with a property settlement agreement or decree of dissolution of marriage or legal separation."

As reflected in the trial court's statement of decision, Spjut's operative complaint alleged that Revenue and Taxation Code section 63, subdivision (c) violated the equal protection guarantee of the federal Constitution insofar as the statute specifies that marital property transfers effected in connection with divorce proceedings, do not constitute a change of ownership, in terms of requiring reassessment of the property for property tax

14.

purposes.  The trial court analyzed Spjut's claim by evaluating the statute under the "rational basis" test and concluded the statute did not violate equal protection.

Spjut argues on appeal that his equal protection challenge posited that Revenue and Taxation Code section 63, subdivision (c) creates a discriminatory classification based on "marital status," which *required* the trial court to apply an "intermediate level of scrutiny," not the rational basis test, in evaluating whether the statute violated equal protection.  However, the authorities Spjut has cited for this proposition are inapposite, and do not establish that intermediate scrutiny applies to Spjut's claim.

Spjut has cited *Clark v. Jeter* (1988) 486 U.S. 456, 461 and *Sessions v. Morales-Santana* (2017) 137 S.Ct. 1678, 1700, fn. 25.  *Clark v. Jeter* notes that "intermediate scrutiny … generally has been applied to discriminatory classifications based on sex or illegitimacy." (*Clark v. Jeter, supra,* at p. 461 [intermediate scrutiny may apply to classifications that "burden illegitimate children" (italics added)].)  *Clark v. Jeter* does not address classifications based on marital status in the context of tax schemes or in any other context, and therefore does not help Spjut.  Spjut's citation to *Sessions v. Morales-Santana*, *supra*, 137 S.Ct. at p. 1700, fn. 25, is similarly unavailing, as it cites *Clark v. Jeter* in noting that distinctions based on illegitimacy ("parents' marital status") and "gender" are subject to intermediate scrutiny.

Accordingly, we decline Spjut's invitation to remand the matter for the trial court to reconsider his "constitutional arguments while applying an intermediate level of scrutiny."

## II.    The Trial Court Provided Appropriate Guidance to the Parties

In a confusing argument, Spjut complains the trial court provided confusing directions as to how the case would proceed.  We disagree.

Spjut's main complaint appears to be that the trial court bifurcated the trial to hear issues of law first, but then dismissed the case after deciding the issues of law.  Spjut

contends the trial court did not make sufficiently clear, in advance, the format it ultimately followed.

However, the record shows the court repeatedly explained to Spjut the format it intended to follow. At a pre-trial hearing held on January 17, 2020, on the defendants' motion to proceed to trial without a jury, the court explained how it intended to handle the case:

> "THE COURT: This is Defendant's Motion to Proceed to Trial Without a Jury as a Bench Trial.
>
> "This is a complaint that is very difficult to file. I mean, to follow. I'm inclined to deny the motion for a bench trial without prejudice. I'm inclined – I think the matter should essentially be bifurcated. There are legal questions that have to be answered by the Court. But once I answer them, one way or the other, that determines, I think, whether there is any further proceedings to be had in front of a jury.
>
> "So I'm inclined to treat the motion in that fashion, deny it as a motion to completely eliminate the jury, but there are legal questions.
>
> "The reason I would deny the motion outright is because the way the matter is pleaded, and it hasn't otherwise been addressed by dispositive motion, there may be matters, for instance, the allegations under 42 U.S.C. Section 1983[,] that may require a jury trial."

The court indicated in this exchange that, upon bifurcation, the first hearing would be on legal issues, and that it could potentially be dispositive.

The issue was addressed again at a later point in the same January 17, 2020 hearing:

> "MS. BRADLEY [counsel for defendants]: Your Honor, the County has no objection to bifurcate the matter to decide the issue of law. What I'm concerned about is under the California statutes the Assessment Appeals Board is the finder of fact in tax matters. And that duty cannot be passed on to a jury. So I'm concerned with that. But I'm more than willing to bifurcate on the legal issues and get that out of the way.
>
> "THE COURT: Right. But if you're right and I decide in your favor, then that would conclude the matter.

16.

"MS. BRADLEY: Agreed.

"THE COURT: Mr. Spjut, I'm inclined to follow my own reasoning in this matter, preserve your right to jury trial but bifurcate and hear the legal questions first. Do you understand that?

"MR. SPJUT: Yes, I do, Your Honor.

"THE COURT: All right. Well, that will be the order of the Court." [¶] … [¶]

"MR. SPJUT: Okay. My only question then, Your Honor, is, see, I was having to prepare the jury instructions.

"THE COURT: No, I'm going to bifurcate, so you don't need to do that.

"MR. SPJUT: Right. That's right. But for the other part of the trial --

"THE COURT: Right. Well, I'll handle that at the time of trial. Because what I'm likely to do is I'm bifurcating so we'll try the questions for the Court first. And then, depending on how I decide, I'll set another date--

"MR. SPJUT: Okay.

"THE COURT: -- for potential jury trial and we'll proceed in that way…."

This record reflects the court kept Spjut informed and made sure he understood the nature of the proceedings. Nor are we persuaded that the court mishandled other aspects of the proceedings and thereby prejudiced Spjut.

## III.   Step Transaction Doctrine

Finally, Spjut contends the trial court abused its discretion in failing to consider Spjut's argument that the step transaction doctrine "should have been applied to determine that a change in ownership occurred on September 29, 2011." The step transaction doctrine is utilized when circumstances warrant " 'combin[ing] a series of steps into one transaction for tax purposes.' " (*Shuwa Investment Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1650 (*Shuwa*).)

17.

Spjut describes the "step transaction doctrine" as follows:

"The Step Transaction Doctrine determines the transfer of ownership based on the actual substance of the transaction. ([*Shuwa, supra,* 1 Cal.App.4th at p. 1648.].) Three tests are used to determine change in ownership under the doctrine – the end result test, interdependence test, and binding commitment test. (*Id*. at 1650-1652.) 'Under the "end result test," purportedly separate transactions will be amalgamated with a single transaction when it appears that they were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result.' (*Id*. at 1650.) The interdependence test 'concentrates on the relationship between the steps and [asks] whether one step would have been taken without any of the others.' (*Id*. at 1652). The binding commitment test is used 'if one transaction is to be characterized as a "first step" [and] there [is] a binding commitment to take later steps.' ([*Ibid.*].)"

The substance of Spjut's argument regarding the step transaction doctrine is essentially one paragraph long, as follows:

"If the Board used any of the tests under the step transaction doctrine to determine Appellant's appeal, it would have found that change of ownership occurred on September 29, 2011. That was the date Appellant and his ex-wife entered into a stipulated agreement in open court. He essentially had possession and ownership of the residence on that date. Appellant and his ex-wife clearly intended that Appellant would take possession and ownership of the residence on September 29, 2011. Thereafter, Appellant's ex-wife was required, under their agreement, to take later steps so that Appellant could refinance the home, and the deed could be recorded. Those acts can be characterized as merely ministerial."

Spjut's argument that the trial court committed reversible error in failing to apply the step transaction doctrine is unavailing. Spjut's argument fails to account for the fact that the transfer of ownership at issue here *occurred between former spouses*, *in connection with a divorce judgment*. The step transaction doctrine may be relevant for purposes of identifying when Spjut's ex-wife effectively transferred her interest to Spjut. However, application of the doctrine would not change the fact that the transfer was made between former spouses in connection with a divorce judgment. Accordingly, application of the step transaction doctrine would not remove the transaction from the

purview of Revenue and Taxation Code section 63, subdivision (c), under which provision there was no transfer of ownership for purposes of property tax reassessments.

Since Revenue and Taxation Code section 63, subdivision (c) applies here regardless of the application of the step transaction doctrine, we decline to remand the matter, as requested by Spjut, "for further consideration with instructions to conduct a Step Transaction analysis to determine whether a change in ownership occurred."

Finally, we note that, to the extent Spjut raises new arguments for the first time in his reply brief, such arguments are rejected as improperly raised. (See *People v. Tully* (2012) 54 Cal.4th 952, 1075 ["It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party."].)

## DISPOSITION

The judgment is affirmed. Each party to bear its own costs on appeal.


SMITH, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


DE SANTOS, J.

19.